LEIGHTON GRAY, JUNE GRAY, EMMA SPENCER, AND SUSAN V. GRAY,
v. CITY OF HIGH POINT.

(Filed 21 December, 1932.)

1. **Municipal Corporations E f—City is liable for depreciation to private land resulting from sewage disposal plant.**

   To the extent that the land of a private owner is depreciated in value by reason of noxious gases and odors given off by the sewage disposal plant of a city, the city is liable for such depreciation as a taking of private property for a public use, although the plant was erected in accordance with plans approved by the State Board of Health and the maintenance of such plant is a governmental function of the city.

2. **Same—Evidence that plaintiff's land was depreciated in value because of odors from sewage plant held sufficient.**

In an action by a private owner of lands to recover damages caused his land by noxious gases and odors emanating from the sewage disposal plant of a city located contiguous to such land, the testimony of several witnesses that odors from the plant were strong and extremely objectionable on the plaintiff's land whenever the wind was from the plant is held sufficient to take the case to the jury, and defendant's motion as of nonsuit was properly denied. C. S., 567.

3. **Trial C d—Trial court in his discretion may allow jury to visit plaintiff's land for purpose of understanding testimony in the case.**

With the consent of the parties it is not error for the trial judge in his discretion to permit the jury to view the plaintiff's land for the purpose of understanding the evidence in the case respecting damages to the land by the maintenance of a city sewage disposal plant when he correctly charges the jury that it must not regard the information so obtained as substantive evidence.

4. **Trial B e—Admission of incompetent evidence held not prejudicial where it has been withdrawn and jury instructed not to consider it.**

Where incompetent evidence relating to the question of damages is admitted during the trial, but thereafter the court withdraws the evidence and instructs the jury not to consider it, and competent evidence based on proper questions is later admitted upon the issue, the admission of the incompetent evidence is rendered harmless, and an exception thereto will not be sustained.

5. **Appeal and Error J e—Where same evidence objected to is later admitted without objection appellant ordinarily loses exception.**

Where incompetent evidence is admitted over objection and the same evidence is theretofore or thereafter admitted without objection, the appellant ordinarily loses the benefit of his exception.

6. **Municipal Corporations E f—Measure of damages in action for injury to land caused by noxious odors from sewage disposal plant.**

Where the maintenance of a sewage disposal plant by a city causes depreciation in value to the plaintiff's land by reason of emanation of noxious odors therefrom, the measure of damages is the difference between the fair market value of the land immediately before and immediately after the injury to the plaintiff's land by reason of the emanation of such odors, and includes its value for all practical purposes to which a reasonably prudent man could have put it.

7. **Evidence K b—Witnesses may testify from their own knowledge as to depreciation in value of land from odors from sewage plant.**

In an action against a city for the depreciation of the value of the plaintiff's land caused by the emanation of noxious odors from the defendant city's sewage disposal plant it is competent for witnesses who resided nearby to testify from their knowledge and observation as to the difference in value of the plaintiff's land immediately before and immediately after the emanation of such odors.

**8. Municipal Corporations E f—Owner of lands may recover for depreciation of land's value from odors from sewage disposal plant.**

The owner of land has a right that the air over his land shall come in its natural purity, and although he may not recover damages for occasional pollution of the air resulting in mere inconvenience or annoyance, he may recover damages sustained by reason of the emanation of noxious odors from a city's sewage disposal plant when such odors are strong and frequent and cause substantial depreciation of the value of the land.

**9. Same—Owner of land is entitled to recover for damage to land from sewage disposal plant from time of first substantial injury.**

Where odors emanating from a city's sewage disposal plant amount to a taking of contiguous private property for a public use the owner of such contiguous land is entitled to damages from the time of the first substantial taking.

**10. Same: Nuisance A a—Owner of land damaged by odors from sewage disposal plant may maintain action for private nuisance.**

The fact that a city's sewage disposal plant causes injury to the lands of several owners in the vicinity by reason of the emanation of noxious gases and odors will not prevent one of such owners from maintaining an action against the city to recover for the injury to his land alone.

APPEAL by defendant from *Oglesby, J.,* and a jury, at February 8th Term, 1932, of GUILFORD. No error.

The plaintiffs allege that they are the owners of a certain tract or parcel of land (describing same) containing about 200 acres; that the sewage disposal plant of the defendant adjoins the lands of the plaintiffs; that sewage from the disposal plant has overflowed and seeped onto the lands of the plaintiffs, and a noxious and violent odor emanating from said disposal plant contaminates the atmosphere adjoining the plaintiffs' lands, and that the defendant has placed certain manholes in the said sewer line and that these noxious odors emanate from the said manholes also. The seepage and overflow and discharge of raw sewage and the emanation of noxious odors, has rendered the lands of plaintiffs unfit for use and unfit for habitation, causing and creating a permanent and continuing nuisance upon the lands of the plaintiffs, as the result thereof they have suffered damage and loss in the sum of seventy-five hundred dollars ($7,500). Plaintiffs' allegations are denied by defendant, and upon the issues there was a verdict for the plaintiffs.

The court below rendered the following judgment: "This cause coming on to be heard and being heard before his Honor, Judge John M. Oglesby and a jury and the jury having answered the issues submitted by the court as follows: (1) Are the plaintiffs the owners of the land described in the complaint? Answer: Yes. (2) Has plaintiffs' land as described in the complaint been wrongfully taken by the defendant through noxious odors from the operation of defendant's sewage plant, as alleged

in the complaint? Answer: Yes. (3) If so, what permanent damage, if any, is plaintiff entitled to recover? Answer: $2,000.

It is, therefore, ordered, adjudged and decreed that the plaintiffs, Leighton Gray, June Gray, Emma Spencer, John B. Spencer and Susan V. Gray, recover of the defendant, city of High Point, the sum of two thousand dollars ($2,000), as permanent damages to the follow-ing described lands of the plaintiffs, to wit: Beginning at a post oak on David Frazier's line; running thence W. 164 poles to a hickory; thence S. 175 poles to a stone; thence E. 164 poles to a red oak; thence N. to the first station, containing 200 acres.

It is further ordered, adjudged and decreed that upon the payment by the defendant city of High Point to the plaintiffs of the said sum of two thousand dollars ($2,000), the payment of the same shall be in full satisfaction and settlement of all damages, claims or demands of the said plaintiffs, their heirs, administrators, executors or assigns and that the plaintiffs, their heirs, administrators, executors or assigns are hereby forever barred from asserting any claim or demand for damages of any nature, kind or description whatsoever for and on account of all damages to the lands of the said plaintiffs above described due to, be-cause of and on account of the construction, location of, maintenance and operation of the sewage disposal plant of the city of High Point on the Mary Wiley land situate in Jamestown Township, Guilford County, North Carolina, and on account of the maintenance of the sewage outfall pipe line, through, over and across the lands of the plaintiffs above described, the said sum of $2,000 being in full settlement and satisfaction of all damages past, present and prospective. It is further ordered that the costs of this action be taxed against the city of High Point. It is further ordered that this judgment be registered in the office of the register of deeds of Guilford County, North Caro-lina, and the same shall operate as a conveyance of a perpetual easement to the city of High Point in and to the lands of the plaintiffs herein described for the purposes herein set forth."

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones will be con-sidered in the opinion.

*Gold, McAnally & Gold for plaintiffs.*
*Grover H. Jones and Sapp & Sapp for defendant.*

CLARKSON, J. At the close of plaintiffs' evidence and at the close of all the evidence the defendant made motions for judgment as in case of nonsuit, C. S., 567. The court below overruled the motions and in this we can see no error. We think the evidence, taken in the light most

favorable to plaintiffs, sufficient to be submitted to a jury on "taking or appropriation."

The plaintiffs owned about 200 acres of land, about 6 miles from the defendant city of High Point. The defendant, within about 10 to 15 feet of plaintiffs' land, on the east side of the farm, erected a sewage disposal plant. The city of High Point has a population, according to the last census (1930) of 36,745 inhabitants. The sewage disposal plant cost $460,000. The plans and the plant as constructed were approved by the State Board of Health. The capacity of the plant was designed for a little less than five million gallons of sewage per 24 hours. The amount of sewage that has been going into it for the 24 hours is on an average of less than half of that. The capacity of the plant is double the amount of sewage it is now receiving. The plant was completed and put into operation about 1 June, 1929. On plaintiffs' farm were good buildings, good home, two-story house, chimney at each end, good well of water, good barn and double crib.

The principle has been long settled in this jurisdiction and so clearly stated in *Donnell v. Greensboro,* 164 N. C., at p. 334, that we again repeat it: "The decisions of this State are in approval of the principle that the owner can recover such damage for a wrong of this character, and that the right is not affected by the fact that the acts complained of were done in the exercise of governmental functions or by express municipal or legislative authority, the position being that the damage arising from the impaired value of the property is to be considered and dealt with to that extent as a 'taking or appropriation,' and brings the claim within the constitutional principle that a man's property may not be taken from him even for the public benefit except upon compensation duly made," citing many authorities. *Cook v. Mebane,* 191 N. C., 1.

In fact, in *Jones v. High Point,* 202 N. C., 722, the defendant in this action, the principle is tersely stated: "The gravamen of the complaint is the partial taking of the plaintiffs' property by the creation of a nuisance, and the jury was specially instructed that the defendant had the right to erect the plant and install the machinery. *Dayton v. Asheville,* 185 N. C., 12; *Sandlin v. Wilmington,* 185 N. C., 257. . . . (p. 723.) The judge told the jury in words that could not have been misunderstood that the defendant had the right to operate the plant as a governmental function and more than once directed attention to the immediate question whether odors emanating from the plant substantially decreased the market value of the land."

The plaintiff introduced the following witnesses:

C. L. Gray testified, in part: That the land had been in the family nearly 100 years, since 1836, and quite a portion subject to cultivation

and free from liens. "Certain refuse from the city goes through the sewer pipes into these receptacles, from the toilets in the city. . . . I have been on that farm during the last three years. I drop there some three or four times a year. I live in High Point. . . . There are 5 manholes in this 3300-foot line. I have been to this city sewage disposal plant and around it. *Well, it is a pretty severe odor of human excrement.* . . . The sewage plant is on the east side of our farm, and when the wind is from the east you can smell it then, of course. . . . When I smell that odor, I would be on the north side of the place about half way, from the middle of it I could smell it. . . . *It is very nauseating.* It turns your stomach if you don't move about and get some good fresh air mighty quick."

Mayfield Hoover: "I live from the Gray place about half a mile, I suppose. I have been at the city disposal plant a time or two, two or three times, I suppose, since it was built. I know about where Mr. Gray's line is. It is right at 10 or 15 feet from the sewage disposal plant, runs right up to it. *There is an odor that arises from this sewage plant that you can smell on this property that is in controversy.* This odor is a hard odor to describe. It has a gas and dye odor connected with it and all, an odor that arises, and the weather conditions has a good deal to do with when you smell it, and where you are at in regard to the wind. *It is a very obnoxious odor, awful bad odor at times.* . . . I have been around the Gray place, the Gray home, since the installation of this sewage disposal plant. You can smell this odor that smells the same as at the plant on the farm there, on the Gray farm, and also on my farm, as far as that is concerned. . . . I smelled it five or ten minutes at a time, when there was a breeze blowing in your path, you smelled it. *I smelled it practically every two or three hours in the day.* In freezing weather we don't smell it. The point is, in sultry weather is our trouble with those odors. That starts in the spring of the year, of course. . . . I have lived where I am now all my life. . . . I haven't objection to the location where the plant is, if they will eliminate the odor. . . . Seems to me we have been smelling this practically ever since the plant was erected there."

Will Leonard: "Have been on the Gray farm about once every week for six years. I farm. I know where this High Point sewage disposal plant is. . . . I smell it when I am at home. I live about 200 feet from Mr. Gray's place. I have smelled it on the Gray place. *Down there around his feed barn, down on the creek.* I couldn't say anything else I didn't like to smell it. *It smelled bad.* . . . *The odor was detected after the plant was built. I didn't smell it before.* That odor was not there as I know of before. I was there on that place before

the time it was built time and time again, and didn't smell any odor.
. . . The place I cultivate is about three-quarters of a mile from this
sewage disposal plant. A little further than the Gray farm is, I have
been tending that piece of property I am on now for two years. . . .
I live about three-quarters of a mile from the disposal plant. I know
about when that odor is going to come. *I close my windows.*"

M. A. Mitchell: "I have smelled the odor. I was sitting on my front
porch, two and a half miles from the plant. Well, if it is a warm
sultry time and the breeze is coming from the south you can smell it."

H. S. Jones: "I know where the High Point city sewage disposal
plant is. I have been there. My land is located about half a mile west
of the plant. I have been living there 32 years. That Gray land is the
adjoining farm to my home. . . . Q. Where have you been when
you smelled those odors? Answer: Well, I have been at my own home
and on the Gray farm both, at both places. . . . *It is a very bad
odor.* It is a mixture of all kinds, and it has gas that forms from
this substance that comes from High Point, from cafes, from hotels,
from hospitals, from all of the toilets everywhere, almost, and it is
put there in one hole and stands there for months, for months at a time.
It has gas from that. I smelled that on the Gray farm. . . . *It is
a sickly musty smell.* I don't know of anything else that is the same,
that has the same smell, very unpleasant. I have been on both sides
of the Gray farm. Been on this side, the north side, and the south side.
I have smelled it mostly on the north side. Same kind of odor I have
been smelling all the time. *Very bad odor, sickly. It smells gasey, just
like escaping gas to me.*"

Leighton Cruthis: "I live on the Gray farm. Am married, and have
a family. I know where the city sewage disposal plant is. I would say
I live between 800 to 900 yards from the disposal plant. I have smelled it
ever since it has been there. *The odors are bad.* . . . I cultivate
the Gray farm, have been there about two years."

There were many other witnesses introduced by plaintiffs who testi-
fied to like effect.

The defendant's witnesses testified to the effect that the sewage dis-
posal plant was erected in conformity to the plans, and approved by
the State Board of Health, and the witnesses, engineers, went into
minute detail as to the manner and method of construction and opera-
tion. The defendant's witnesses denied the material allegations of plain-
tiffs' witnesses.

The following is in the record, unobjected to: "The court further in-
structs you that the court permitted you to view the premises in question,
and that the court exercised its discretion in permitting you to do so.

Counsel have agreed—both counsel for the plaintiffs and the defendant—that they had no objection to you going to the plant and investigating and looking at the condition there. The court did this so that you might have a better impression of the whole situation. The court further instructs you that it charges you now that you are not to consider anything that you saw as substantive evidence; that what you saw upon a visit to the premises is to be considered by you only to enable you to understand the testimony of the witnesses." *S. v. Stewart,* 189 N. C., at p. 345.

The defendant contends that it was "prejudiced by the testimony admitted over appellant's objection in which witnesses were allowed to testify as to the value of plaintiffs' land before and after the erection of defendant's sewage disposal plant, notwithstanding his Honor on the second day of the trial instructed the jury not to consider the evidence." This contention cannot be sustained.

In *S. v. Stewart, supra,* at pp. 344-5, citing a wealth of authorities, is the observation: "The power of the court to withdraw incompetent evidence and to instruct the jury not to consider it has long been recognized in this State." *Parrott v. R. R.,* 140 N. C., at p. 548; *Baker v. International Shoe Co.,* 199 N. C., at p. 385; *Nance v. Fertilizer Co.,* 200 N. C., at p. 708.

The court below, after calling attention to certain evidence of plaintiffs' witnesses, who testified as to value of the property, instructed the jury not to consider it, and clearly instructed the jury "If it made any impression upon your mind disabuse your mind of that impression." We can see no prejudicial error. Certain witnesses testified as to the odor, and, if objectionable, the questions of value or damage was thereafter properly propounded to the witnesses, the following being substantially the questions and answers thereto: "Q. Do you have an opinion satisfactory to yourself as to the fair market value of this Gray land immediately prior to the emanation of these odors? Answer: Yes, sir. Q. Do you have an opinion satisfactory to yourself as to the fair market value of the Gray land after the odors had begun to emanate? I have. I am familiar with land value in that vicinity, the market value of land in that vicinity. Q. What in your opinion was the fair market value of the Gray land immediately prior to the emanation of those odors from this plant? Answer: Well, I think the place would be cheap at $50 an acre. Q. Do you have an opinion satisfactory to yourself as to whether or not the market value of this land has been impaired by virtue of the odors which you have described? Answer: Yes, sir. Q. What is that opinion, and what is the impairment, if any? Answer: That it has been impaired, and I would state that to be practically $20 per acre."

The witnesses examined were familiar with land values in that vicinity. Defendant propounded similar questions to many of its own witnesses, who stated the land was not damaged.

On this aspect the principle has long been settled in this jurisdiction. "In *Moser v. Burlington,* 162 N. C., at p. 144, we find: 'On the question of damages, his Honor correctly applied the rule as it obtains with us, that the damages are confined to the diminished pecuniary value of the property incident to the wrong. *Metz v. Asheville,* 150 N. C., 748; *Williams v. Greenville,* 130 N. C., 93; the evidence as to specific cases of sickness in plaintiff's family having been admitted and its consideration allowed only as it tended to establish the existence of the nuisance and the amount of damage done to the property." *Wagner v. Conover,* 200 N. C., 84; *Greensboro v. Garrison,* 190 N. C., at p. 578; *Construction Co. v. R. R.,* 185 N. C., at pp. 45-6; 46 C. J., p. 829.

In fact, unobjected to, J. E. Leonard, a witness for plaintiff, in rebuttal testified, in part: "I am a farmer. I have been to this city disposal plant. I certainly did observe odors emanating from that plant during those years I spoke of. I observed those odors while on the Gray farm. Several times. I have been at the house on the Gray farm. The odors are pretty severe; very unpleasant to me. I have an opinion satisfactory to myself as to the fair market value of the Gray property, the Gray farm, immediately prior to the emanation of those odors from this plant, immediately before the odors began to emanate. I think I am familiar with land values in that section." The witness then stated his opinion as to the fair market value immediately prior to the emanation of the odors—"I have an opinion satisfactory to myself as to the extent this land has been impaired, if any. I would say it has been cut down as much as $25 an acre."

In *Shelton v. R. R.,* 193 N. C., at p. 674; citing numerous authorities, the following observation is made: "It is thoroughly established in this State that if incompetent evidence is admitted over objection, but the same evidence has theretofore or thereafter been given in other parts of the examination without objection, the benefit of the exception is ordinarily lost." *Nance v. Fertilizer Co.,* 200 N. C., at p. 708.

The court below charged the jury: "The court further instructs you that the owner of land has a right that the air which comes upon his premises shall come in its natural purity, free from artificial impurities. This right, the court further instructs you, has its correlative obligation, which is that one must not use his own premises in such a manner as to discharge into the atmosphere of his neighbor noxious gases and odors which substantially affect its wholesomeness. The court further instructs you, that this right of the air in its natural condition is one

of the rights that attach to the freehold, and that if it is denied the owner by being substantially invaded by the defendant, as alleged in the complaint, that is, by discharging noxious odors upon the Gray land, the defendant would be liable. The court further instructs you that the invasion or denial of the right must be a substantial invasion or denial. The noxious odors, if any, must permeate or pass over the plaintiffs' land in such volume and with such frequency or to such an extent as to constitute a taking. The court repeats that occasional odors merely causing inconvenience or annoyance will not constitute a taking as contemplated under the law. Therefore, gentlemen of the jury, the question presented for you to determine in your deliberations is, have the plaintiffs established by the greater weight of the evidence or preponderance of the evidence that the plaintiffs' land has been wrongfully taken by the defendant through noxious odors from the operation of defendant's sewage disposal plant? If so, the court instructs you that liability would attach; otherwise it would not." We can see no error in the charge above, and defendant's exceptions and assignments of error must be overruled.

In *Cook v. Mebane,* 191 N. C., at p. 10, we find: "In *Rhodes v. Durham,* 165 N. C., p. 681, *Hoke, J.,* speaking to the subject, says: 'It is contended for defendant that damages of this character should not be allowed, because the property of plaintiff does not abut directly upon the stream, and there has been no physical invasion of plaintiff's rights in the same; but this position, in our opinion, cannot be sustained. The property injured extends to within 50 yards of the stream, and the evidence tends to show and the jury has established that defendant wrongfully maintains there permanent conditions amounting to a nuisance, bringing plaintiff's property directly within the harmful effects and sensibly impairing its value. In *Donnell v. Greensboro, supra* (164 N. C., 330), the Court, in speaking to a similar suggestion, said: 'In such case, and except as affected by the existence of certain rights peculiar to reparian ownership, a recovery does not seem to depend (at all) on whether the damage is carried through the medium of *polluted water or noxious air;* the injury is considered a taking or appropriation of the property to that extent, and compensation may be awarded.' . . . And 1 Lewis on Eminent Domain (3 ed.), sec. 230, says: 'The owner of land has a right that the air which comes upon his premises shall come in its natural condition, *free from artificial impurities.* This right has its correlative obligation, which is that one must not use his own premises in such a manner as to discharge into the atmosphere of his neighbor dust, smoke, noxious gases, or other foreign matter which substantially affects its wholesomeness,' etc.' *Moser v. Burlington,* 162 N. C., p. 144." *Surratt v. Dennis,* 199 N. C., 757.

The court below further instructed the jury: "A nuisance, gentlemen of the jury, the court finds is anything that worketh hurt, inconvenience or damage to another, and the fact that the act done may be otherwise lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful or such as would affect only one of fastidious taste, but it must be such as would affect an ordinarily reasonable man. The court instructs you, gentlemen of the jury, that the plaintiffs cannot recover for occasional odors whereby the plaintiffs on their land would experience annoyance and inconvenience."

The defendant contends that the decision in *Holton v. Oil Co.,* 201 N. C., 744, is contrary to the charge of the court below. We think not. The above charge is an epitome of the holding in the *Holton case,* and cases therein cited. In that case it was said, at p. 748: "The law only deals with real, substantial injuries—*de minimis non curat lex.* The law does not recognize nervous particularity."

The court further charged the jury: "The court repeats that the plaintiffs, if entitled to recover at all, would be entitled to recover only for the impairment of the market value of the property by noxious odors as alleged in the complaint. These odors must be sufficient to constitute a taking, and must directly and proximately cause a wrongful taking by the defendant through the operation of the sewage disposal plant. The court further instructs you that if you find there was a taking, then it would be for you to determine in your deliberations when the taking occurred and what date damages, if any, would occur. The court instructs you that the plaintiffs would be entitled to recover, if entitled to recover at all, from the time the first substantial taking occurred." We can see no error in the charge, objected to by defendant, as we think the evidence sufficient to be submitted to the jury on "taking or appropriation."

It was agreed that an issue as to permanent damage should be submitted to the jury, which was done. *Wagner v. Conover,* 200 N. C., at p. 85.

The court further charged the jury: "The court further charges you that in estimating the value of property that has been taken, all the capabilities of the property and all the uses to which it may be applied or for which it is adapted are to be considered, and not merely the condition it was in at the time or the use to which it was then applied by the owner. That is, you determine whether or not there has been a taking and what damage, if any, the taking would result to the property in the use to which it may be applied by a person of ordinary prudence. The court further instructs you the particular use to which land is applied at the time of the taking is not the test of its value, but its availability for any valuable or beneficial use to which it would likely

be put by a man of ordinary prudence should be taken into account by you." *Ayden v. Lancaster,* 197 N. C., 556. To this there was no exception, and we think it well states the law.

As to defendant's discussion in regard to the right of action by an individual to recover for a public nuisance. In *McManus v. R. R.,* 150 N. C., at p. 662, we find: "As we have heretofore endeavored to show, the nuisance alleged in the complaint, and established by the verdict on the first issue, is of a kind and character which involves the invasion of the rights of all owners or lawful occupants of adjacent property whose individual rights are injuriously affected, and a right of action on any one of them is in no way impaired because the injury done him is the same or similar in kind to that of all others in like circumstances, however numerous. Such owner is not required to establish the existence of damage or injury special and peculiar in reference to the injury generally suffered by other adjacent owners who are similarly situated."

"A nuisance may be both public and private." *Swinson v. Realty Co.,* 200 N. C., at p. 279, citing *McManus v. R. R., supra.*

The court below ably and clearly set forth the law applicable to the facts and plumbed the decisions of this Court, and in no wise impinged C. S., 564. It looks like thrashing over old straw—the matters in this appeal, it seems to us, have been so long settled in this jurisdiction. We will repeat, as was said by *Hoke, J.,* in the *Donnell case, supra,* at p. 337: "Recognizing the importance of the principle involved and the practical effect of its application in the present instance, we have given the cause our most careful consideration, and, having done this, we must administer the law as we are enabled to see it, and trust to the moderation and good sense of our juries to make fair and righteous adjustment of the conflicting interests involved." In the judgment below, we find

No error.