77 P.2d 765

**RIX et al. v. TOWN OF ALAMOGORDO.**

No. 4323.

Supreme Court of New Mexico.

March 17, 1938.

George A. Shipley, of Alamogordo, for appellant.

J. L. Lawson, of Alamogordo, for appellees.

BICKLEY, Justice.

Plaintiffs owned a house and lot situated in the lowlands of the town of Alamogordo. Some years ago canals were constructed, designed for the protection of the highways of the town and the property of the inhabitants thereof from the effects of surface waters precipitated in said town and vicinity. For several years past these canals have been under the control of the defendant town. About two years ago there was constructed under defendant's direction a new large canal for about two miles and one of the old canals was enlarged. The new and the enlarged old canal collected a large volume of surface water and discharged increased quantities of such water with increased velocity thereof during heavy rains or floods into an old canal. The defendant failed to enlarge this receiving canal and culvert therein to accommodate such increased flow of water and failed to provide means to carry off such increased amount of flood water. In 1935 heavy rains fell in and east of the town and a large amount

of flood water gathered in said canals and flowed down into the old canal and culvert in such volume that they were unable to carry them off, both being of insufficient size, the culvert being poorly constructed so that it became clogged up with brush and debris. Because of these defects and inadequacies the flood water overflowed an adjacent street and down onto the plaintiffs' property, depositing dirt and debris on the lot and injuring the house thereon. Plaintiffs sued for $428.30, the estimated cost of rebuilding and repair and for the rental value of the premises during the period of restoration. The court gave judgment for the former amount but denied the rentals.

The court heard the testimony of witnesses, examined maps of the town offered by defendant, and early in the trial suggested the propriety of making a tour of inspection to locate the physical features so as to be better able to understand the evidence. This was agreed to by both parties, and the judge, with map in hand, accompanied by the attorneys, made the tour of inspection in order to assist him in becoming acquainted with the situation. The next day the trial was resumed in the courthouse and the court concluded "that the defendant by discharging the said larger volume of water with increased velocity into the said Second Street canal and culvert and overtaxing both, on the date complained of, was a contributing cause to the flooding and damaging plaintiffs' said property on the said date charged and defendant is liable to plaintiffs for said damages above fixed herein and plaintiffs are entitled to judgment for the same with costs herein."

 Herein exists the foundation of legal liability of the defendant.

"The public has no more right to commit a trespass upon the land of an individual than has a private citizen, and if it does so it is liable to an action whenever the statutes permit the particular subdivision which commits the act to be sued. If a municipality gathers together a quantity of water and then fails to provide an outlet for it, so that it is cast upon the land of an abutting owner, it commits a direct trespass upon his property and cannot shield itself under the plea that it had discretion as to the adoption of plans for the drainage and is not liable for injuries caused by the exercise of its discretion. It has no discretion to commit a trespass, and, if the plans adopted by it necessarily result in so doing, it is just as liable as though it deliberately turned the water out of its course on to the abutting land. It has discretion as to whether it will drain or not, but, when it attempts to drain, it must provide for the water collected by it so that it will do no injury." Farnham, Waters and Water Rights, vol. 2, p. 1136.

To the same effect see City of Houston v. Bryan, 2 Tex.Civ.App. 553, 22 S.W. 231, where the court said: "The city was not originally bound to furnish ditches or sewers for the purpose of draining plaintiff's property of the surface water which naturally passed over it, and it was not,

therefore, bound to keep open the ditch which it had dug, so long as it did not by its negligence increase or divert the flow of such surface water, to plaintiff's injury; but when it collected water from other territory, and concentrated it in this ditch, it was bound to provide sufficient outlet for it, so that it would not be forced upon plaintiff's land in larger quantities than would have flowed over it without such act. The rule of law applicable in such cases is thus stated by Judge Dillon: 'There will be liability [of a municipal corporation] if the direct effect of the work, particularly if it be a sewer or drain, is to collect an increased body of water, and to precipitate it on the adjoining private property, to its injury.' And further: 'There is municipal liability where the property of private persons is flooded, either directly or by water being set back, when this is the result of the negligent execution of the plan adopted for the construction of gutters, drains, culverts, or sewers, or of the negligent failure to keep the same in repair and free from obstruction; and this, whether the lots are below the grade of the streets or not.' Dill.Mun. Corp. 1051. See, also, Gross v. City of Lampasas, 74 Tex. 195, 11 S.W. 1086. It follows from this that the city was liable upon the facts above stated."

In 85 Am.St.Rep. 707, is an extensive note on "The right of one land owner to accelerate or diminish the flow of water to or from the lands of another." At page 726 of 85 Am.St.Rep. is discussed "Accelerating or increasing the flow of surface water." At page 730 of 85 Am. St.Rep. 707, the note writer says: "The rule is universally recognized that a land owner has no right to collect surface water in an artificial channel, and discharge it in large quantities upon the land of a lower owner to his damage. Of this general proposition there is no doubt." Citing cases.

The note writer continues: "This is both the rule of the common and the civil law: See, particularly, Barkley v. Wilcox, 86 N.Y. 140, 40 Am.Rep. 519. Under neither rule can surface water be accumulated in artificial channels and cast in undue and unnatural quantities upon the land of another: Illinois Cent. R. Co. v. Miller, 68 Miss. 760, 10 So. 61."

In 27 R.C.L., Water, § 79, p. 1152, it is said: " * * * It is the generally recognized rule both of the civil and the common law that a landowner cannot collect surface water into an artificial channel or volume, or precipitate it in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter. This is true although no more water is collected than would have naturally flowed upon the property in a diffused condition, for it is evident that, while a given piece of land may receive a large amount of surface water without injury thereto when it gently flows thereon from natural causes, yet when collected and discharged in considerable volume at a given point, it may become very destructive and injurious." Citing Johnson v. White, 26 R. I. 207, 58 A. 658, 65 L.R.A. 250, and note.

■ In 9 R.C.L., Drains & Sewers, § 78, p. 684, it is said: "It is well settled that as a general rule what would be illegal in the disposition of surface or other waters in the case of a private individual is likewise illegal when attempted by the public authorities. * * "

■ In 26 R.I. 207, 58 A. 658, 659, 65 L.R.A. 250, is reported the case of Johnson v. White, accompanied by a note in the L.R.A. on "Rights and duties of municipal corporations with respect to surface water." In the reported case the court held: "A municipal corporation is liable for injuries to property upon which it casts surface water in a body across intervening land by means of a drain or culvert in a highway, although no more water is collected than would have naturally flowed upon the property in a diffused condition."

The court said: "The defendant's counsel contends that, as there has been no diversion of surface water, other than that which would naturally have found its way to and upon the plaintiff's land, had not said drain been built, the city cannot be held liable for any damages in the premises. He argues that, in view of this fact, the case does not fall within the rule laid down by this court in Inman v. Tripp. 11 R.I. 520, 23 Am.Rep. 520. * * *

"We think, however, that the principle involved in the Inman Case is applicable here. That principle, briefly stated, is this: That no one has a right to collect surface water in any considerable quantity upon his own premises, and then turn the same in a concentrated form upon the premises of his neighbor in such a manner as to cause him damage. Not that an owner of land may not so change the grade or surface thereof as to cause surface water to flow in a different direction from what it did before the natural contour thereof was changed, for this such owner doubtless may lawfully do. But he may not collect and concentrate such water, by means of drains or otherwise, and then turn it upon his neighbor's land in a volume. And the law doubtless is that a city has no greater power over its streets, in the matter of disposing of surface water which accumulates thereon, than a private individual has in disposing of the surface water which falls or collects upon his own land; and as held in the case referred to, a city 'cannot, under the specious plea of public convenience, be permitted to exercise that dominion, to the injury of another's property, in a mode that would render a private individual responsible in damages, without being responsible itself.' * * *

"In this connection we may observe that we fail to see that it is material whether the water thus collected would have flowed upon the plaintiff's land in a given case, or not, but for some artificial structure. For it is evident that, while a given piece of land may receive a large amount of surface water without injury thereto when it gently flows thereon from natural causes, as it is alleged was the case here before the construction complained of,

yet, when collected and discharged in considerable volume at a given point, it may become very destructive and injurious."

In McCarthy v. Village of Far Rockaway, 3 App.Div. 379, 38 N.Y.S. 989, 990, the court said: "The case at bar is complicated by the fact that the respondent's lot would, by reason of its position in reference to the surrounding land, receive in its natural course the flow of a large body of surface water, but the testimony on the part of the respondent tended to show that before the construction of the culvert the water spread out over a large space, and that the effect of the construction of the culvert and the grading of Broadway was not only to increase the flow of surface water, but to concentrate it in a solid stream, and thus increase its power to cause injury to the respondent's property. This was the essential fact to the respondent's right to recover, and the jury's finding upon it has ample support in the testimony."

 The defendant says it was error to refuse its requested finding of fact No. 7, which is as follows: "A municipal corporation, in the construction and maintenance of a drainage system for protection against surface water, is to be held to the use of ordinary care in making provision only for ordinary surface waters and is not required to use such care to guard against the damage from extraordinary or unprecedented flows of surface waters."

As an abstract proposition this perhaps correctly states the law, and the approval of it by the court would not have been inconsistent with his other findings. The court found that before the construction of the Alaska avenue canal the Second street canal and culvert were sufficient to carry the normal rain or flood flow and what might reasonably be anticipated; that after the construction of the Alaska avenue canal, the capacity of such canal and culvert was overtaxed; that after the construction of the "new canal" two years prior to the commencement of this suit and the enlargement of the junction of the new canal and the old canal with the First and Second street canals, a larger volume of water, with increased velocity, was discharged into the First and Second street canals and that the defendant negligently failed to enlarge the Second street canal and culvert to accommodate such flow of water and failed to use ordinary care and diligence to provide means to carry off such increased amount of flood water. It is apparent that the court did not hold the defendant to accountability to take care of an extraordinary or unprecedented rainfall because he held "this damage could have resulted had the rainfall not been unprecedented or extraordinary," and he also accepted the defendant's theory that the damage was to some extent caused by the act of God, because he found that defendant's negligence was only a "contributing cause to the flooding and damaging plaintiff's said property." Had the court entertained the view that the defendant was required to "guard against damage from extraordinary or unprecedented flows of

surface water" the court would doubtless have said that defendant's negligence was the cause of the damage, and not that it was a contributing cause. The whole record indicates that the court regarded this a case of where the defendant's negligence concurred with an act of God to cause the injury.

In 45 C.J., Negligence, § 485, it is stated: "As a general rule, it may be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury. So that where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them; it being sufficient that his negligence is an efficient cause, without which the injury would not have resulted, to as great an extent, and that such other cause is not attributable to the person injured."

In Second Decennial Digest, Negligence, under ☞61(1) is the following headnote: "If the defendant's negligence commingled with and operated as a contributive element proximate to the injury, it is liable, even though such injury was due to an act of God."

In the Third Decennial Digest, Negligence, ☞61(1), the headnote is as follows: "If the defendant's negligence concurred with that of another, or with the act of God, and became a part of the direct and proxi-mate cause of the injury, although not the sole cause, the defendant is liable."

A very large number of cases may be found digested supporting this principle. We find among the cases so digested our own decision in Crespin v. Albuquerque Gas & Electric Co., 39 N.M. 473, 50 P.2d 259, 260, as follows: "Defendant is liable for negligence which was proximate cause of injuries to plaintiff who was not guilty of contributory negligence, although negligence of defendant combined and united with negligence of another person to cause injury."

Appellant says that, while the court found that the negligent acts and omissions of the defendant were a contributing cause to the damage to plaintiff's property, the court did not find that it was the proximate cause of such damage. We do not find that this exact question was presented to the trial court. The trial court adopted certain findings requested by defendant, adopted others as amended, and refused some. The court accepted and made as its findings of fact all of plaintiffs' requested findings and thereupon counsel for the defendant excepted generally and announced: "and the defendant requests permission to file in this cause the reasons for their exceptions and written objections." The court granted such request. The record does not contain any further exceptions and written objections to the findings of the trial court except the general exception found in the judgment: "To all of such findings, conclusions and entry of this judg-

ment the defendant excepts." However, we think the omission of the word "proximate" in the court's findings is not very important. In Baker v. State Industrial Accident Commission, 128 Or. 369, 274 P. 905, 910, it is said: "By 'proximate cause' or 'probable cause' is not meant the last act of cause or nearest act to the injury, but such act as actually aided in producing the result as a direct and existing cause. It need not be the sole cause, but it must be a concurring cause."

Undoubtedly the rush of flood water upon the property of the plaintiffs was the proximate cause of the injury. When the trial court found that defendant's negligent acts were "a contributing cause to the flooding and damaging of plaintiffs' property" proximateness of the cause was necessarily implied. We cannot conceive of negligence being a contributing cause to the flooding and damaging of plaintiffs' property and not being such negligence as must have proximately contributed to the injury. We think the finding that the negligence of defendant was a contributing cause includes a finding that it was a proximate contributing cause. When two forces commingled cause an injury each and both are contributory proximate causes. See Pettes v. Jones, 41 N. M. 167, 66 P.2d 967, where we held that the facts disclosed negligence bearing such causal relationship to the injury that it could not have contributed thereto at all without having contributed proximately. That decision is here cited chiefly for its discussion and citation of other decisions to the effect that upon occasion the review-ing court may be justified in supplying the word proximate in findings, instructions, and verdicts. Furthermore, as heretofore pointed out, no specific objection was made to the finding on the ground that it does not find "proximate" contribution and, having in mind the presumption of correctness attending judgments of the trial court, we are satisfied the judgment in the case at bar would not have been entered unless by the use of the words "contributing cause" the court had meant "proximately contributing cause." At least, the burden was on defendant to show a misconception of the law on the part of the trial court. A specific objection to the finding in this respect would have exposed error in the trial court's view, if any such error existed. We are not to presume its existence to overturn the judgment. Rather, we should and do presume its nonexistence in support of the judgment.

In Oklahoma Ry. Co. v. Boyd, 1929, 140 Okl. 45, 282 P. 157, 163, a situation somewhat similar to the case at bar was presented, and the court said: "If the floods in question may be termed acts of God, there can be no question under this evidence but that the manner of constructing the dam with fewer openings than originally existed, with a less carrying capacity than required, and causing the water to act as it did during the flood, was a contributing proximate cause of the damage sustained. One is not liable for damage resulting solely from an act of God; but if his negligence is a present contributing cause, which, commingled with the act of God, produces the

injury, then he is liable, notwithstanding the act of God."

Appellant says that the finding of the trial court that there was negligence in this case on the part of the defendant which contributed to cause the damage complained of is unsupported by the evidence. We have read the testimony attentively. We are unable to agree with appellant. In aid of clarifying and explaining the testimony of the witnesses, the trial court had the opportunity to observe the lay of the land, the canals, and the situation generally, and recites in his judgment that he made his findings after having viewed the canals of defendant as well as the property of plaintiff. Under these circumstances appellant assumes a heavy burden in challenging the findings of fact as being unsupported. In Scheurer v. Banner Rubber Co., 227 Mo. 347, 126 S.W. 1037, 28 L.R.A.,N.S., 1207, 21 Ann.Cas. 1110, it was decided: "Where one sustains damages from separate and independent sources, it is the duty of the triers of fact, though the injuries may be concurrent in point of time, to separate, as best they can from the evidence, the amount of damages caused by defendant's negligence, and the difficulty of separating the damages is no bar to a recovery."

In Street's Foundations of Legal Liability, at page 64, note, it is said: "The defense of 'act of God' was ineffectually interposed in Nitro-Phosphate, etc., Chemical Manure Co. v. London Etc. Docks Co. (1877) 9 Ch. D. 503, where the damage was caused by an extraordinary tide four feet and five inches high overflowing a wall which it was the duty of the defendant to maintain. The court found that the defendant breached a statutory duty in failing to maintain a retaining wall at the height of at least four feet. He was therefore guilty of negligence and was held liable for entire damages. Under the circumstances it was impossible to apportion the damage done by the water which flowed over after the tide reached the top of the wall but before it reached the statutory four feet and that which poured over after the tide had reached the full four feet."

So, in the case at bar, the trial court having found that because of the defendant's negligence the plaintiffs' damage could have resulted had the rainfall not been unprecedented or extraordinary, the court was doubtless under great difficulty in attempting to apportion the damage done by the flow of water which would have resulted from heavy rains and floods which were not unusual in the vicinity and should have been anticipated, and the additional amount due to the extraordinary rains. But as we have seen, this difficulty of separating the damages is no bar to a recovery and we are not convinced that the trial court was in error with respect to the award which fell somewhat short of the plaintiffs' demands.

The defendant pleaded the special defense that the injury was the result of an act of God. Did it not thus assume the burden of showing that the damages resulted solely from the act of God and that it contributed in no way thereto? It is asserted in many

decisions that such is the rule. We need not answer this interesting question now. See 45 C. J., Negligence, § 689; and case note, 29 L.R.A.,N.S., 663.

Finding no error in the record, the judgment will be affirmed, and the cause remanded, and it is so ordered.

HUDSPETH, C. J., and ZINN, J., concur.

SADLER, Justice (specially concurring). I think the prevailing opinion reaches the correct result. Of course, to entitle the plaintiff to recover, the defendant's negligence must have been *the* proximate cause of the injury; or, it must have been *a* proximately contributing factor concurring with another force, either unavoidable or the result of negligence, to produce the injury complained of and without which it would not have occurred.

The findings are not as clear as they might be. For instance, the finding that "this damage *could* have resulted had the rainfall not been unprecedented or extraordinary" (italics supplied) falls short of determining liability. The word "would" must be substituted for "could" to afford such a conclusion.

Neither is it enough to support liability that negligence merely contributes to an injury. Proximate causation—efficient contribution as a substantial factor in producing the harm complained of—must appear. I shall here take neither the time nor the space to set forth my views upon this subject. They are expounded at length in my dissenting opinion, concurred in by Mr. Justice Brice, in the case of Pettes v. Jones, 41 N.M. 167, 186, 66 P.2d 967, 979.

In the case at bar the court's mere finding that defendant's negligence was "a contributing cause to the flooding and damaging of plaintiff's property" might be fatal to recovery but for the presumption of correctness attending the judgment under review. Absent an objection below to this finding upon the ground that it does not find proximate contribution, as said in the prevailing opinion, it may and should be assumed in support of the judgment that such degree of contribution was intended. Otherwise the court would not have given plaintiff judgment.

In Pettes v. Jones, supra, no such presumption could properly be deduced as that here indulged. We there were dealing with claimed conflict between a general and a special verdict. The general verdict acquitted the plaintiff of negligence that contributed *proximately* to cause the injury. The special verdict merely found that such negligence contributed "to any (some) extent." There, (a jury case) every presumption short of irreconcilable conflict between the general and special verdicts (which, in my opinion did not exist) obtained in favor of the general verdict. The majority in that case supplied by presumption the word "proximate" for the special verdict. Thus arose the irreconcilable conflict between the general and special verdicts which re-

sulted in overturning the judgment reviewed.

The exact point decided by the majority in Pettes v. Jones, supra, is correctly stated in the opinion herein of Mr. Justice Bickley, viz., that under the peculiar facts there shown a finding that plaintiff's negligence contributed *to any extent* (however slightly) to the injury was a finding as a matter of law that it contributed proximately. The most that can be said of the holding in its broader aspect is that in a limited class of cases, having peculiar facts, such as the automobile "tail light" case in Pettes v. Jones, supra; or, the automobile "cutout" case dealt with in Hines v. Foreman, Tex. Com.App., 243 S.W. 479, (cited in the opinion of Mr. Justice Bickley in Pettes v. Jones, supra), the "any extent" or "any degree" doctrine of causation will be applied. Any departure from the rule of proximate causation in negligence cases is disclaimed by the assertion that in this class of cases contribution to any degree is proximate causation. Thus is formal adherence to the doctrine of proximate causation preserved while its substance is drawn away.

But recognizing, as I do, that the law for this jurisdiction has been declared as above stated in Pettes v. Jones, supra, my concern is to confine application of the doctrine within as narrow limits as possible, since obviously, and to the extent that it operates, its practical effect is to strike down proximate causation as the test and to substitute in its stead the "any degree" or "any extent" theory.

With recurring frequency we may expect to be confronted by plaintiffs who, unable to establish actionable negligence by the usual proximate cause test as applied outside the limited field occupied by Pettes v. Jones, supra, will attempt to persuade us that their facts bring them within the doctrine of that case. Only to the extent that we are able accurately to catalogue and classify the varying factual situations as placing the case within or without the control of Pettes v. Jones, supra, shall we be able to prevent its doctrine from invading the whole field of negligence.

The instant case furnishes the first example of facts which, according to the evident view of the prevailing opinion, calls for classification. I do not think it calls for classification. On the contrary, since the defendant, by proper action below, failed to test the trial judge's mind upon the issue discussed, I think we must presume, in support of the judgment and from the very fact that he rendered the judgment he did, that in denominating defendant's negligence a "contributing cause" of plaintiff's injury he meant a "proximately contributing cause." Thus, I am spared the necessity of determining whether the factual situation here disclosed calls for an application of the doctrine of Pettes v. Jones, supra, in part relied upon in the opinion of Mr. Justice BICKLEY.

I concur in the result announced by him.

BRICE, J., concurs.