136 P.2d 480

**BARKER v. CITY OF SANTA FE.**

No. 4692.

Supreme Court of New Mexico.

April 14, 1943.

R. P. Fullerton and Charles B. Barker, both of Santa Fe, for appellant.

M. W. Hamilton, of Santa Fe, for appellee.

BICKLEY, Justice.

The complaint alleged that the defendant, a municipal corporation, for five years had owned and operated a sewage disposal plant within its corporate limit, near a public highway, and near the dwelling where Agapita Urioste, plaintiff's intestate, a girl

less than ten years of age, lived and had her home.

The plant is described, and it is alleged that it consists of tanks filled to a depth of about eighteen feet with a discharge from the sewers of the defendant city; that there was floating on top of the mass in said tanks a deposit of sludge and filth with the appearance of ordinary dirt or soil, to a depth of about two feet. There is a fence inclosing the tanks with gates for vehicles and pedestrians on the highway side of the plant.

The gates to the inclosure were open and the fence down in several places, particularly on the side toward the house of Agapita Urioste, deceased, so that children and other persons and animals could enter the inclosure unimpeded. The plant and the fence inclosing it were substantially in the same condition as they had been for more than three years prior to the date when Agapita Urioste left her home and went in and upon the premises, and being attracted to the tanks, she approached the same. The child was wearing her father's hat and the wind blew it off and into one of the tanks and upon the sludge and filth that covered the water. The child, not knowing that it was dangerous to do so, being deceived by the floating sludge and filth, stepped into the tank and upon said sludge and filth which did not bear her weight, and before she could be rescued, she was drowned.

The complaint alleged by way of conclusion that the conditions in and upon and around said tanks was a dangerous nuisance and that since the instrumentality was attractive to children, it was an attractive nuisance.

There are other allegations of the complaint, but it is sufficient to say that they all, taken together, sufficiently allege a condition amounting to the maintenance of a dangerous and attractive nuisance. We also hold that the allegations of the complaint are sufficient to establish negligent conduct by the defendant.

The defendant demurred to the complaint upon the ground that the complaint does not state facts sufficient to constitute a cause of action, for the sole reason that: "It affirmatively appears on the face of the complaint that the injury complained of occurred at the city sanitary disposal plant and, in the maintenance and operation of a sanitary sewage disposal plant, this defendant, a municipal corporation, was acting under its police powers and discharging a governmental function for the negligent performance of which it cannot be held liable or responsible for damages."

Appellee's counsel here says that this presents the only question involved in the case. All we will consider and decide is whether the complaint will withstand the demurrer upon the ground presented.

The general rule, supported by what the author of the text in American Jurisprudence, post, says is the great weight of authority, is that a city is not liable for torts committed in the exercise of govern-

mental functions, but is liable while exercising corporate functions. 38 Am.Jur. 261–267, Secs. 572, 573; Barron v. City of Detroit, 94 Mich. 601, 54 N.W. 273, 19 L.R.A. 452, 34 Am.St.Rep. 366; 9 A.L.R. 143; Aldrich v. City of Youngstown, 106 Ohio St. 342, 140 N.E. 164, 27 A.L.R. 1504; Hoggard v. Richmond, 172 Va. 145, 200 S.E. 610, 120 A.L.R. 1376; Hughes v. City of Auburn, 161 N.Y. 96, 55 N.E. 389, 46 L.R.A. 636. See, also, Town of Gallup v. Constant, 36 N.M. 211, 11 P.2d 962.

While this distinction between governmental and ministerial or corporate ·functions is still a well recognized doctrine in the decisions, the holdings as to what constitute a governmental function and what is a ministerial or corporate one are so confusing that it is difficult to reconcile them.

It is asserted by some law writers and decisions that there has been a growing demand from society in general that the governmental agencies or subdivisions should not·be immune from tort liability.

The writer of the Annotation, "Rule of municipal immunity from liability for acts in performance of governmental functions as applicable in case of personal injury or death as result of a nuisance", in 75 A.L.R. page 1196, says: "The whole doctrine of governmental immunity from liability for torts rests upon a rotten foundation. It is almost incredible that in this modern age of comparative sociological enlightenment, and in a republic, the medieval absolutism supposed to be implicit in the maxim, 'the King can do no wrong', should exempt the various branches of the government from liability for their torts, and that the entire burden of damage resulting from the wrongful acts of the government should be imposed upon the single individual who suffers the injury, rather than distributed among the entire community constituting the government, where it could be borne without hardship upon any individual, and where it justly belongs."

A criticism of the reasons assigned in support of the doctrine so much under attack will be found in an article in Brooklyn Law Review, April 1932, entitled: "Should the Liability of Municipalities in Tort be Extended to Include Injury and Damage Caused in the Negligent Performance of a Governmental Function?"

In an annotation "Municipal immunity from liability for torts", in 120 A.L.R. 1376, it is stated that the doctrine of immunity rests upon three grounds: First, the technical rule that the sovereign is immune from suit; second, the ancient idea that it is better that the individual should suffer an injury than that the public should suffer an inconvenience; and third, that liability would tend to retard the agents of the City in the performance of their duties for fear of suit being brought against the municipality. The writer then proceeds with what to many would seem a plausible condemnation of each of these grounds of support of the ancient and rigorous doctrine.

Since we find it unnecessary in the case at bar to express any conviction as to the

merits of the ancient rule and the so called modern tendency to depart from it, we will say no more about it except incidentally in resolving any doubts that arise as to whether the alleged negligent acts of the appellee-City were committed while in the discharge of a governmental function.

In the Brooklyn Law Review article cited supra, it is said:

"Some of the more important tests are: The municipality acts in a governmental capacity

"I. When it performs a duty imposed by the legislature of the state.

"II. Only when such imposed duty is one the state may perform and which pertains to the administration of government.

"III. When the municipality acts for the public benefit generally, as distinguished from acting for its immediate benefit and its private good.

"IV. When the act performed is legislative or discretionary as distinguished from ministerial."

We find from an examination of our statutes that municipalities have *authority* to build and maintain sewers but there is no imperative legislative command that they do so. Such facilities do not pertain to the administration of government, to say the least, not to state government. See City of Waco v. Branch, 117 Tex. 394, 5 S.W.2d 498. It can hardly be said that a municipality in the construction and maintenance of a sewer system acts for the state-wide public generally. It is a local improvement and is paid for generally by local assessments on the theory of benefits to the properties served and the owners and users thereof. And we take judicial notice of the fact that the cost of maintenance of the sewer system in Santa Fe may be defrayed by levy of a special tax upon those who are served through connections with the system, including disposal plants. See N.M.S.A.1941, Sec. 14-3637. Some courts have emphasized the voluntary assumption of duty, i. e., its permissive rather than mandatory character. For example, the Court of Appeals of New York, in Augustine v. Town of Brant, 249 N.Y. 198, 163 N.E. 732, 62 A.L.R. 551, decided: "Town *held* not exempt from liability for negligence causing death in park, on ground that maintenance of town park was exercise of governmental function, notwithstanding that establishment of a park may incidentally benefit the public health."

The Oklahoma Supreme Court in City of Anadarko v. Swain, 42 Okl. 741, 142 P. 1104, imposed liability on the basis that one of the main purposes of instituting a system of public parks is to furnish a safe place for children to play, and therefore the city should have the duty of using reasonable care. See also Van Dyke v. City of Utica, 203 App.Div. 26, 96 N.Y.S. 277.

It has been said that a meandering but steady trend toward holding municipalities increasingly liable in tort has been given impetus by the Supreme Court of the United States in Keifer & Keifer v. Recon-

struction Finance Corporation, 1939, 306 U.S. 381, 59 S.Ct. 516, 521, 83 L.Ed. 784, where "a steadily growing policy of governmental liability" and "the expanding conceptions of public morality regarding governmental responsibility" were recognized and relied on by Mr. Justice Frankfurter in his opinion.

In New Mexico Products Company v. New Mexico Power Company, 42 N.M. 311, 77 P.2d 634, 641, where the City of Santa Fe claimed "that it was not liable for its torts in the exercise of its governmental function," we recognized this tendency to extend the liability of the municipality. We there said: "Where there is doubt as to whether the city is liable, the question will be resolved against the municipality."

In that case, we also cited as having some significance the 1905 act of the Territorial Legislature, saying as follows: "Our Legislature has provided that a municipal corporation shall be responsible for the torts of its officers 'when done by authority of such municipal corporation, or in execution of the orders thereof.' 1929 Comp.Stat. § 90-623,"

Just how much weight is to be given this statute, we do not now decide, but since under nearly all the authorities, municipalities had long before its enactment been held liable for torts of municipalities when committed in the exercise of its corporate as distinguished from its governmental functions, it is argued that its purpose was to cast upon the municipality liability for its torts not theretofore recognized.

It has been suggested that we are apparently in line with the modern tendency by reason of our decisions in Johnson v. City of Santa Fé, 35 N.M. 77, 290 P. 793; Napoleon v. City of Santa Fe, 38 N.M. 494, 35 P.2d 973, holding that municipalities are liable for the tortious acts of persons in its employ engaged in constructing or repairing streets. Whether this suggestion is correct or not, we do not undertake to say, since it does not appear that counsel for the City there urged the defense invoked in the case at bar.

Professor Edwin M. Borchard of Yale University (author of "Declaratory Judgments"), in an article in Vol. 34, Yale Law Journal, says:

"The conflict of authority as to the liability of municipal corporations for negligence in the maintenance of streets is reflected in the law governing the liability of the city for the tortious acts of persons in its employ engaged in constructing or repairing the public streets. Immunity or liability in these matters depends upon the view of the particular courts as to whether the duty is governmental or corporate, and in this respect there is the usual wide divergence, *depending often upon the particular line on which the courts in that jurisdiction got started.* There is no discoverable operative principle. The same confusion prevails as to street cleaning, a question further complicated by the fact that courts disagree in their view as to whether clearing the streets of dirt and refuse pertains primarily to the corporate duty of

taking care of the streets or the governmental duty of preserving the public health.

"In the construction and maintenance of public works or improvements, *such as sewers, drains, etc., we find a greater disposition to hold the city liable for negligence.* The explanation of this disposition can hardly be found in the usually ascribed reason that such undertakings are not governmental, but ministerial in character; it is found rather in the fact that *when a public enterprise creates a direct nuisance to private property,* the governmental nature of the undertaking seems, in the minds of the courts, to become subordinate or immaterial." (Emphasis supplied)

McQuillin on Municipal Corporations, 2d Ed., sec. 2796, says: "Certain duties and functions are well settled as being corporate and not governmental, * * * the construction and repair of sewers, and generally the management of property owned by the municipality."

It should be remembered that in the case at bar, the city owned and operated the instrumentality in question. And again, at section 2871, McQuillin says: "As heretofore mentioned, generally the operation of a sewerage system by a municipality is regarded as the exercise of a corporate as distinguished from a governmental function."

It is suggested that there is a shade of argument in favor of holding the operation of a sewer to be the exercise of a corporate function, whereas the construction and re-pair of streets might not be. That is to say, that there is more to recommend the view that sewers are less for the benefit of the public at large than are streets.

McQuillin mentions a similar thought at page 1233, when he says: "It will be noticed that this liability in regard to the construction and maintenance of sewers is one of the most widely admitted of any liability for municipal tort, and this is so even in such jurisdictions as the New England states which deny common law liability for injury from defective streets;"

We take it that the phrase "It will be noticed" refers to text and citations in the same and immediately preceding sections of the author's work.

In our own decision in Rix v. Town of Alamogordo, 42 N.M. 325, 77 P.2d 765, 766, we decided: "The public has no more right to commit a trespass upon the land of an individual than has a private citizen."

A sound basis for limiting this doctrine to injuries to property is not readily discernible. See 38 Am.Jur.Mun.Corp. Sec. 584.

In Section 2872 of McQuillin we observe a warning that the damages for which a municipal corporation is liable, due to neglect to observe "Sanitary precautions in the care and maintenance of its sewers" are those arising from injuries to property, and do not, it is generally held, extend to death, sickness and physical discomfort caused by such neglect. The courts are divided on this proposition.

We need not worry about this at the present, since the only portion of plaintiff's complaint which charges a failure of the city to observe "sanitary precautions" is contained in Section 10 of said complaint which was not attacked by the demurrer but by a motion to strike which motion was not ruled on by the District Court and is not here involved. Furthermore, it is difficult to see how the character of the damages suffered, whether to the person or property of the one complaining, would affect the narrow question of whether the operation of a sewage disposal plant is in the exercise of a governmental as distinguished from a corporate function. See 38 Am.Jur.Mun.Corp. Sec. 584.

In Barker v. State, 39 N.M. 434, 49 P.2d 246, we laid down the broad proposition: "Where municipal corporation in exercise of any of its powers, or in performance of any of its duties, incurs in contract or in delicto any liability whether arising from express legislation or by implication, it cannot escape such liability unless relieved therefrom by some valid provision of law." Quoting from McQuillin on Municipal Corporations, Sec. 4773.

McQuillin in turn in the second edition of his work at Sec. 2773 cites Barker v. State, supra, to the proposition that: "An exemption from a recognized liability cannot be claimed unless expressly given—certainly in a doubtful case a claim of exemption should be resolved against the corporation." This would seem to suggest that we should not limit the doctrine cited from the Rix case to injuries to property alone.

McQuillin, 2d Ed. Revised, Vol. 6, at p. 1061, says: "Certain duties and functions are well settled as being corporate and not governmental, including * * * the construction and repair of sewers, and generally the management of property owned by the municipality." In note 74 some illustrations are given as follows:

"*Construction of a sewage disposal plant*, held not a governmental function. Jamison v. Kansas City [223 Mo.App. 684] 17 S.W.2d 621.

"Operating a sewage disposal plant, though a governmental function, which injures another creates liability. Gray v. High Point, 203 N.C. 756, 166 S.E. 911.

"Action for damages to land arising from operation of sewage disposal plant. Gray v. High Point, 203 N.C. 756, 166 S.E. 911.

"Measure of damages for permanent injury to farm from sewer disposal plant construction. Sewer and Waterworks Improvement District v. McClendon, 187 Ark. 510, 60 S.W.2d 920.

"*Corporate function.* Construction of storm sewers is corporate act which does not exempt municipality from liability. [City of] Amarillo v. Ware [120 Tex. 456] 40 S.W.2d 57.

"Operation of street grader for purpose of cleaning gutters held municipal or corporate function. [City of] Panhandle v. Byrd, Tex.Civ.App., 77 S.W.2d 904."

■ Limiting our decision, of course, to the facts of the present case, we adopt the view that the duty of the City to keep the sewage disposal plant in repair and in safe condition is a corporate function.

We conclude that the allegations of negligence on the part of the plaintiff are sufficient as against the attack made thereon by the demurrer.

■ This brings us to the authorities on Nuisances. McQuillin Municipal Corporations, at sec. 2812, says: "Nor can the municipality itself create and maintain a nuisance which results in injury to person, or inflicts or involves damage to private property, without subjecting itself to civil liability for its wrongful and unlawful act, as further shown by illustrative cases cited in the note hereto, and this is true regardless of the fact whether or not the thing done or omitted resulting in the nuisance constituted negligence; and moreover, the municipality cannot escape liability therefor on the ground that in doing so it was exercising a governmental function." The note contains many illustrations, and among them the following: "Sewers. Municipality is liable for a nuisance created by the operation of its sewer system, and is not relieved therefrom by the fact that it was exercising a governmental function in maintaining the sewer. Sammons v. Gloversville, 175 N.Y. 346, 67 N.E. 622."

In Hoffman v. Bristol, 113 Conn. 386, 155 A. 499, 500, 75 A.L.R. 1191, the court said: "While, as we have seen, Connecticut has so far aligned with those states which do not hold a municipality liable for negligence in the performance of governmental functions and duties, we have definitely and repeatedly recognized that a similar immunity does not attach to nuisances created by it."

White on Negligence of Municipal Corporations, sec. 110, says: "Municipal corporations may not create or maintain nuisances.—Courts have frequently declared that a municipal corporation has no more right to create or maintain a nuisance than a private individual has, and that an action may be maintained against such a corporation for injuries occasioned by a nuisance created or maintained by it, in any case in which, under like circumstances, an action could be maintained against an individual. In the creation of a nuisance a city does not exercise a governmental function, but is doing something forbidden by law."

Sec. 90-402 Comp.St.1929 (Sec. 14-1830, 14-1835, 1941, N.M.Stats.Anno.), confers upon municipalities the power to abate nuisances, not to create them.

A distinction has been drawn between a city engaged in emergency and non-emergency services. In Illinois Law Review, Vol. 32, pp. 374, 375, it is said: "It would appear that a sensible medium could be reached by assessing liability in those instances in which damage results from positive conduct of a nature so flagrant as to seem unnecessary to the ordinary functioning of a government. Thus, in undertakings in which constant supervision of the city's agents is impossible, and emergency action is frequently involved, it is mani-

festly unfair to hold the city strictly accountable; but in activities which can be subjected to close control by the governing authorities, exaction of responsibility for readily preventable tortious conduct is not unreasonable." If this is a fair test, the case at bar is a flagrant abuse, since it is alleged in the complaint that the dangerous condition of the defendant's property described, prevailed for about three years, although repeated protests had been made to the officers, agents and servants of the defendant.

As heretofore noted with respect to liability due to a municipal corporation's neglect in the care and maintenance of its sewers, the liability is limited by some courts to injuries to property, so is the same distinction made by some courts as to the maintenance by the municipal corporation of nuisances with respect to liability, some courts limiting the damages to those arising from injuries to property. But the writer of the annotation in 75 A.L.R. p. 1196 on "Rule of municipal immunity from liability for acts in performance of governmental functions as applicable in case of personal injury or death as result of a nuisance" says: "A majority of the courts which have passed upon the question have held that the immunity of municipal corporations from liability for acts done in the performance of governmental functions does not extend to cases of personal injuries or death resulting from a nuisance created or maintained by a municipality, and that a municipality is liable for such injuries, although the nuisance was created or maintained in the course of the discharge of public duties or governmental functions."

It seems to be the theory of the defendant as reflected by the demurrer that the City is not liable in damages for its negligence and that it may commit a nuisance to the detriment of its inhabitants and others provided the acts alleged to have been committed were done in a governmental capacity. The annotation in 75 A.L.R. cites a few cases which seem to support this view but they are contrary to the majority view.

As heretofore seen, there is much controversy as to whether particular municipal activities are in their nature governmental or ministerial and corporate. We do not undertake to lay down any general rule as a guide to determine such controversies, nor do we find it necessary to express an opinion as to what extent the asserted principle that a municipal corporation is not liable in damages for the negligent and tortious acts of its officers and agents committed with its authority may be applicable.

It is enough to say that, resolving any doubts that may exist in favor of liability, as we are admonished in New Mexico Products Company v. New Mexico Power Company, supra, we find that the allegations of the complaint sufficiently charge the defendants with negligent conduct of its corporate affairs in the particulars therein stated, and with maintenance of a nuisance.

From all of the foregoing, we hold that the complaint is sufficient to withstand the

demurrer, and that the judgment must be reversed and the cause will be remanded to the District Court with directions to overrule the demurrer.

It is so ordered.

SADLER, MABRY, and BRICE, JJ., concur.

ZINN, C. J., did not participate.