397 P.2d 15

**Jesse E. LITTLE, Plaintiff-Appellee and Cross-Appellant,**

**Robert G. Tellez and Gustavo Herrera, Plaintiffs-Appellees,**

**v.**

**Paul PRICE, Defendant-Appellant and Cross-Appellee.**

No. 7382.

Supreme Court of New Mexico.

July 20, 1964.

On Rehearing Dec. 7, 1964.

Garland & Martin, Las Cruces, for appellant.

T. K. Campbell, Las Cruces, for appellees.

CHAVEZ, Justice.

This is an appeal from a judgment awarding damages caused by flood waters and ordering the removal of certain artificial earthen diversion and detention dikes constructed by plaintiff Little and the defendant.

On April 27, 1959, plaintiffs, Jesse E. Little, Robert G. Tellez and Gustavo Herrera, filed an amended complaint against defendant Paul Price, alleging that defendant was the owner of certain land in Dona Ana County upon which defendant, between January 1, 1947, and December 31, 1956, constructed certain artificial dirt structures, sometimes called dikes, so as to divert and direct rain water away from its natural watercourses and away from the cultivated land of defendant onto the land of plaintiffs; that the first structure, completed in 1947, was located east of the farm headquarters and north of the farm headquarters road, and ran in length about 800 feet in a north-south direction; that a second structure was located several hundred feet northwest of the first structure, run-

ning in a westerly direction from U.S. Highway 80 for 277 feet and then curved southerly; that a third structure was constructed, located immediately east of defendant's cultivated land, running in a north-south direction for 2100 feet; that all of these structures diverted and directed rain water away from a diffused state into large concentrated volumes of water flowing away from defendant's cultivated land onto plaintiffs' land located below and to the west of defendant's land; that in 1952, plaintiff Little became aware of the perilous position of his land by reason of the structures and advised defendant that the structures could not remain, as built; that defendant, rather than remove the structures, permitted plaintiff Little to construct a dirt structure about 3000 feet in length, running in a north-south direction on defendant's land across the mouth of the area where defendant had diverted the rain water; that plaintiff Little constructed the dirt structure so that the accumulated water would flow to the north and out of the basin, and that plaintiff Little also constructed a gate for the purpose of water drainage; that defendant then constructed the third dike, 2100 feet in length, and in so doing connected the two dikes thus destroying the spillway provided by plaintiff Little; that after construction defendant negligently failed to maintain the structure in proper condition, permitting water to saturate the subsoil, allowing sand and silt to accumulate, and causing the dam to become inadequate to hold water which accumulated as a result of heavy rains; that on August 21, 1958, a heavy rain occurred, causing large quantities of rain water to accumulate behind plaintiff Little's dam and, as a result of the inadequacy of the dam by faulty maintenance and destruction of the spillway, the water ran over the top of the dam causing it to break and water flowed in large concentrated volumes causing great damage to plaintiffs' land; that the water accumulated over a period of several hours, during which time defendant failed to open the check gate releasing the water over a long period of time, further contributing to the damage caused to plaintiffs; and that the water, having accumulated in large quantities, was discharged upon plaintiffs' land in great volumes and force and in a more concentrated flow than would have resulted if the defendant had not negligently constructed the dirt structures. After alleging their individual damages, plaintiffs alleged irreparable injury if the structures were not removed and prayed for a mandatory injunction along with money damages.

On May 12, 1959, the defendant answered alleging, in his first defense, a failure to state a claim upon which relief could be granted; in his second defense, a denial of all material allegations; in his third defense, that the construction of the highway by the state highway department and the construction of the dam by plaintiff were

the proximate causes of the injuries to plaintiffs; or, in the alternative, that the injuries were caused by an Act of God; in his fourth defense, that plaintiff Little was guilty of contributory negligence; and for the fifth defense, laches of plaintiffs and estoppel, since the plaintiffs all had knowledge of the construction of the structures by defendant and reclamation of his land at a great cost. Defendant then cross-claimed against plaintiff Little, alleging negligence on the part of Little in construction of the broken dam. In answer to the cross-claim, plaintiff Little denied all material allegations thereof. Trial was held and resulted in a judgment for plaintiffs, Herrera and Tellez, against cross-defendant Little and defendant Price, the court finding them to be joint tortfeasors.

The trial court's findings of fact show the following incidents which gave rise to this action and appeal. Defendant-appellant Price, from 1936 on, owned certain lands in Dona Ana County near Mesquite, New Mexico, and in 1949 commenced to place about 350 acres of land in cultivation, expending approximately $70,000 and increasing the value of the land to about $175,000. Lying immediately west of defendant Price's land was a 15-acre tract owned by plaintiff Little, lands owned by Frank Parra, not a party to this action, and lands owned by plaintiff Herrera. Plaintiff Tellez, by lease, farmed a portion of defendant's land.

The land in question was the arid, desert-type land surrounding the fertile, irrigated Rio Grande valley and, because its elevation was higher than the valley floor, it was called in the area "Mesa Land." Its topography was dependent upon the courses of two arroyos running approximately in the same direction, the Pena Blanca Arroyo on the north and the Mossman Arroyo on the south. The Pena Blanca Arroyo arises in the foothills on the western slope of the Organ Mountains and flows generally westward and southwesterly some 8–10 miles before passing under alternate U.S. Highway 80, thence southwesterly across defendant's land. The Mossman Arroyo likewise arises in the same foothills and also flows in a westerly and southwesterly direction for some 5–6 miles to a point on defendant's land, that point also being the termination of the Pena Blanca Arroyo. Because of the slope of the land, one-quarter of the flow of the Mossman Arroyo had flowed to the west and directly toward plaintiffs' land. As regards the Pena Blanca Arroyo, ordinarily water was confined to its bed since, in relation to the surrounding terrain, it was the lowest point and, at that point where it crossed U.S. Highway 80, the land to the west, being higher in elevation, was known as a crown or "hogback." Defendant's land to the north and east of plaintiff Little is also higher in elevation and descends gradually to the 15-acre tract owned by plaintiff

Little, thus placing this land in the bottom of a swale which, prior to plaintiff's reclamation of the tract, had been a ponding area for flood waters.

Plaintiffs and their predecessors in title have always had problems with flood waters, all of them constructing dikes along the easterly side of their land and next to defendant's land to protect their land from the flood waters of the two arroyos. Frank Parra, who owned some forty acres immediately west of defendant's land, had constructed a dike upon his land which diverted water in flood time off of his land and onto plaintiffs' and defendant's land. Defendant Price, between January 1, 1947, and December 31, 1956, constructed upon his land certain dirt structures which diverted and directed fallen and accumulated rain water away from his land and onto plaintiffs' land. The trial court further found that plaintiffs, who resided near defendant's land where the dikes were constructed on the banks of the arroyo, knew or should have known in the exercise of ordinary care, that defendant was placing the dike along the banks of the arroyo and bringing into cultivation a large tract of land and at great cost, and made no protest thereto. The Pena Blanca Arroyo, at the point where defendant constructed the dike along the arroyo, had a well-defined channel, banks and bottom, which overflowed at flood time. The evidence showing that the earthen structures ran for some distance along Pena Blanca Arroyo, the trial court found that the arroyo had not been diffused in full, but had divided itself into smaller arroyos, and that none of the dikes constructed by defendant impounded any water. Plaintiff Little received compensation for the earth work performed by him on some of the dikes and Lonnie Beyer, a partner of plaintiff Little, performed certain work on the dikes and received compensation therefor.

Downstream from the Pena Blanca Arroyo lay plaintiff Little's 15-acre tract, formerly a ponding area but reclaimed by plaintiff Little by the construction of a four-foot-high dike around it, which prevented flood waters from flowing into the tract and diverting flood waters onto the land of other plaintiffs herein. However, because of the construction of defendant's dikes, plaintiff Little felt that his land was imperiled by flood waters and to protect his land he constructed, with defendant's permission and on defendant's land, an earthen dike 2700 feet long, ranging in height from 4–16 feet, directly across the arroyos and impounding all water flowing through the arroyos into a dike or dam. The dike was constructed by plaintiff Little and defendant contributed nothing by way of money, labor or material, and received no compensation or service of any kind or character by reason of the construction of this dike. This dike permitted the accumulation of larger and more concentrated volumes of

water after the water had, due to the diversion structures, been allowed to accumulate in large, unnatural and concentrated volumes.

The physical features of the dam constructed by plaintiff Little upon defendant's land were: A ponding area of about 100-acre feet; no emergency spillway; and the only outlet being a 24-inch tube at the bottom which would allow approximately 25-second feet of water to escape. One other physical feature that would affect the flow of the water was the construction of alternate U.S. Highway 80, which ran through defendant's land and past a point approximately one-fifth of a mile to the east of the dam constructed by plaintiff Little. Pena Blanca Arroyo flows under this highway through 27 four-foot tubes. Mossman Arroyo flows under the highway through two cattle underpasses, eight-feet high and eight-feet wide. The highway is raised from two to four feet above the surrounding terrain, constituting a natural barrier for the flow of water, thus diverting the water to the 27 tubes and the two cattle underpasses. The highway department also constructed a number of small one-foot-high dikes along the easterly edge of the highway, diverting surface water to the openings under the highway. Some of defendant's dikes were to the east of the highway and some to the west, the court finding that the dikes constructed by defendant on the east side of the highway could not affect the runoff of water, since all water flowing toward plaintiffs' land from the Mossman Arroyo was forced through the "cattle over pass [sic]." The trial court also found that since the highway as now situated constituted a dike, the removal of defendant's earthen dikes would not benefit any of the plaintiffs, and in the judgment the trial court refused to order their removal. This point is not questioned on appeal, therefore, we do not consider it.

Prior to 1954, the dam constructed by plaintiff Little on defendant's land impounded water for irrigation which was used by both plaintiff Little and defendant. Defendant failed to maintain the dam, sand and silt were permitted to build up and accumulate behind the dam, and water was allowed to saturate the subsoil, all of which made the dam inadequate to hold the water accumulated behind it. In 1954, plaintiffs, for the first time, complained to defendant about the water impounded behind plaintiff Little's dam, but no agreement was reached at that time or at any time subsequent thereto concerning the water. In 1955, plaintiff Little advised defendant that the dam was not being properly maintained, at which time Little offered to maintain it in proper condition. On August 16, 1955, plaintiffs and defendant attempted to reach an agreement concerning the control of the outlet of water through the tube under said dike, at which time plaintiff Little acquired the sole control thereof; but plaintiffs and de-

fendant never reached an agreement concerning the same and due to such failure plaintiff Little abandoned and refused to have any further control or maintenance of said dike. However, at no time thereafter did Little advise defendant that he was abandoning the maintenance of said dike. The trial court further found that defendant Price did not exercise any control over the dike constructed by plaintiff Little, nor did he maintain it in any manner; that on one or two occasions defendant used water flowing from the tube to irrigate a small portion of his land; and that, at the time of the flood, defendant "was responsible for the gate being open."

Between the hours of 11:00 p. m. on August 21, 1958, and 3:00 a. m. on August 22, 1958, an unusually heavy rain occurred in the vicinity of the parties' land and on the westerly slope of the Organ Mountains, which rain caused an average flow of water of 1,000-cubic feet per second, with a peak flow of 3,000-cubic feet per second, through the Mossman and Pena Blanca Arroyos. This flow of water equaled in quantity approximately 330-acre feet of water. This rain was of an unprecedented volume and could not have been anticipated by a reasonably prudent man, and was an unusual, extraordinary, sudden and unexpected manifestation of the forces of nature. Because of this heavy rain, large quantities of water were diverted from their natural watercourses

by the structures built by defendant and directed into the area behind the dam constructed by plaintiff Little. The surface waters were not permitted to diffuse, spread out and follow their natural course but were, by such dikes and structures, diverted to and accumulated in large quantities behind the dam located on defendant's property. As a result thereof, the area behind the dam filled to capacity and ran over the top of the dam, causing the dam to break for a distance of approximately 1,300 feet, washing away said dam in three separate places. When the dam broke, the water impounded behind the dam flowed out with great force and in large concentrated volume onto plaintiffs' land, causing great damage to plaintiffs as follows: (1) Gustavo Herrera, who farmed 17.1 acres of land, had his cotton crop damaged in the amount of $2,500, his ditches destroyed, and his land made unlevel, the cost of restoration being $223.85, and in an effort to mitigate his damages pumped water from his crops at an expense of $180; (2) Robert G. Tellez, who farmed 16.1 acres of land, suffered damages to his cotton crop in the amount of $850, damages to his lettuce crop in the amount of $250, damages to his land, the cost of restoration being $234, damages to his house and outbuildings, the cost of repair being $410, and in an effort to mitigate the damages pumped water from his field at an expense of $180; (3) Jesse E. Little, who was farm-

ing 114 acres of land, suffered damages to his cotton crop growing on 52 acres of land in the amount of $3,500, damages to his lettuce crop growing on 62 acres of land in the amount of $3,000, damages to his land, the cost of restoration being $2,525.-60. We note that, regarding the question of damages to plaintiff Little due to the destruction of his lettuce crop, the trial court found the market for lettuce in the Fall of 1958 was so low that some farmers plowed it under rather than harvest it. However, as the court also found that Little was contributively negligent, we disregard the element of damages to the lettuce crop.

The trial court, in its findings of fact, refused to find defendant acted negligently in constructing the dam and his diversion dikes where they were located. The trial court found that defendant, at the time he constructed the dikes, could not have reasonably known or anticipated that a dam would be constructed across the arroyo by plaintiff Little or any other person; that at the time defendant gave his consent for the construction of the dam by plaintiff Little, he did not know that Little would negligently construct a dam without a spillway, or otherwise fail to comply with the laws of the state of New Mexico.

The specific acts which the trial court found to be acts of negligence were:

"30. That the construction of said dam by the plaintiff, Little, with the resulting damages from the waters breaking the same, was an act of negligence on the part of the plaintiff, Little.

"20. That said dam, in order to have been safely constructed, should have contained an emergency spillway which would have allowed the water to escape without overflowing the top of the dam, and thereby washing away the earthen structure.

"18. That the plaintiff, Little, in constructing said dam or dike wholly failed to comply with Sections 75–5–1 through 75–5–30 of the 1953 New Mexico Statutes Annotated, in that the said Little was not a registered professional engineer and did not have such a person in charge of the construction of the dam, and in that no plans were submitted to the State Engineer's office for approval or any approval obtained for the construction of said dam, and in that the final completed works were not inspected by the State Engineer or any other qualified engineer, all as required by said sections.

"9. That the water which accumulated behind the said dam did so over a perid of several hours dur-

ing which time the defendant did carelessly and negligently fail to open the check gate constructed in said dam for the purpose of releasing the accumulated water in small quantities over a long period of time in order to prevent large quantities of water from accumulating behind the dam; that by reason of his failure to open the check gate and permit the water to flow out he did further contribute to the cause of the break in the dam and the resulting damages suffered by the plaintiffs hereinafter mentioned.

"36. That the defendant, Price, gave his consent to the plaintiff, Little, to construct a dam across the Mossman and Pena Blanca arroyos but that the defendant, Price, did not know at the time he gave his consent that the plaintiff, Little, would negligently construct the dam in question or fail to construct an adequate spillway in said dam and otherwise fail to comply with the laws of the State of New Mexico, but that plaintiff's agent [sic, defendant] later refused to allow defendant [sic, plaintiff's agent] to return and construct an adequate spillway."

The trial court then found that the inadequacy of the dam constructed by plaintiff Little, which impounded the waters from said arroyos at the time of the flood and, when the dam broke, caused them to flow with great and sudden force and velocity onto lands and premises of plaintiffs, was the proximate cause of a part of the damages suffered by plaintiffs.

Defendant-appellant's main argument is based upon the idea of a single act of negligence proximately causing the injuries complained of. In his first point, he contends that the following findings of fact and conclusions of law are inconsistent and will not support the judgment: That finding of fact No. 9 is inconsistent with finding of fact No. 20, both quoted above, and with finding of fact No. 23, which states:

"23. That the small tube installed in said dam was wholly insufficient in size to carry off said inflow of water on the date of the flood whether the same was open or not."

that finding of fact No. 25 is inconsistent with findings of fact Nos. 3 and 7, which provide:

"25. That by reason of the insufficiency of the dam constructed by the plaintiff, Little, to impound the large volume of water accumulating behind it through said two arroyos, the waters de-

stroyed said dam and flowed over and through the breaks in the same in a large volume with great velocity in a short length of time, and across the intervening land of defendant and onto the lands and premises of the several plaintiffs.

"3. That during the period of time between January 1, 1947, and December 31, 1956, the defendant, through his agents and employees, negligently, wrongfully and unlawfully constructed certain artificial dirt structures or dikes upon portions of the land mentioned in paragraph 2 above so as to divert and direct rain water which has fallen and accumulated in arroyo beds located on such land and in the hills east of such land away from the cultivated and improved land of the defendant over onto the lands of the plaintiffs.

"7. That the plaintiff, Jesse E. Little, with the permission of the defendant, constructed the above mentioned dam behind which large volumes of water above mentioned could accumulate. After the construction of the dam the defendant failed to maintain same in a proper condition. That sand and silt did accumulate and build up behind the dam structure and did permit large quantities of water to accumulate behind the structure, thereby saturating the subsoil, thereby making the area behind the dam inadequate to hold water which accumulated behind same on August 21, 1958; that prior thereto and during the year of 1955, the plaintiff, Jesse E. Little, advised the defendant that the dam and the area behind the dam was not being properly maintained, at which time the plaintiff, Jesse E. Little, offered to maintain the dam in proper condition."

and that finding of fact No. 35 is inconsistent with conclusion of law No. 2:

"35. That at the time the defendant, Price, constructed the dikes which he built on his land, he did not know and could not reasonably have anticipated that a dam would be constructed completely across said arroyo by the plaintiff, Little, or by any other person.

"2. That the construction of the several dikes by the defendant upon his land as alleged in the amended complaint was negligent, wrongful and unlawful."

Appellant, in his points V and VI, still argues a single act of negligence as follows:

"V. The court having found in its findings Nos. 18, 19, 20, 29 and 30, that the dike constructed by the plaintiff Little, was negligently constructed, and by its finding No. 36, that defendant Price, when he consented to the construction of the dike by plaintiff Little, did not know that it would be negligently constructed, the court committed error in refusing to make and adopt defendant's requested conclusion of law No. 6, that the construction of the dam (dike) by the plaintiff Little, was an independent, intervening cause, proximately causing the damages to plaintiffs.

"VI. The court having found by its finding No. 54, that the rain of August 21 and 22, 1958, was of an unprecedented volume and was of such volume that the same could not have been anticipated by a reasonably prudent man and was an unusual, extraordinary, sudden and unexpected manifestation of the forces of nature, the court should have made and adopted defendant's requested conclusion of law No. 8, that same was an Act of God."

Our attention is directed to Rix v. Town of Alamogordo, 42 N.M. 325, 77 P.2d 765, in which plaintiffs were landowners in the lowlands below drainage canals constructed, designed and under the control of defendant town. A new large canal was constructed under defendant's direction, which drained into the old canals, but which were not enlarged to accommodate the increased flow of water. The culvert in the receiving canal became clogged up with brush and debris and defendant town failed to maintain it. During a heavy rainfall, the old canal overflowed and a flood resulted causing damage to plaintiffs' property. The trial court awarded damages for repair and restoration. On appeal, defendant-appellant argued, among his points, that there was no legal liability on the part of defendant, even if negligent, for the unprecedented flood, regardless of any negligence of defendant which could have produced the injury. This court said:

"In 45 C.J., Negligence, § 485, it is stated: 'As a general rule, it may be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury. So that where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them; it being sufficient that his negligence is an efficient cause, without

which the injury would not have resulted, to as great an extent, and that such other cause is not attributable to the person injured.'"

And in Shephard v. Graham Bell Aviation Service, 56 N.M. 293, 243 P.2d 603, we held:

"A defendant may not find shelter behind the plea the injury was caused by an act of God when, but for his concurring negligence, the injury would not have occurred."

In 93 C.J.S. Waters § 153, p. 870, it is said:

"In order that an act of God may relieve the dam owner from liability, such act must have been the sole cause of the injury, and if the damages were occasioned by a combination of defendant's negligence and an unprecedented storm, defendant is liable if his alleged negligence was a proximate cause of the injury. * * *"

We therefore hold that the above mentioned contentions of appellant are without merit. As we read the trial court's findings of fact and conclusions of law, plaintiff Little's negligent act was the construction of the dam without a spillway; and defendant's negligent acts were his failure to maintain the dam free of sand and silt and his failure to open the check gate, releasing some water and thereby lessening the damages; all of said negligent acts being concurring proximate causes.

Appellant's points II, III and VIII are:

"II. Defendant's requested findings Nos. 26 and 43 that the dikes constructed on the northerly or westerly side of the Pena Blanca Arroyo did not divert water, but merely held it in its natural channel were supported by substantial evidence and should have been adopted by the court.

"III. Defendant's requested finding No. 33 that the waters flowing through the Mossman and Pena Blanca Arroyos ran off defendant's lands at about the same point that they had always escaped prior to construction of any dikes by defendant, was supported by substantial evidence and should have been adopted by the court.

"VIII. Since the defendant Price constructed his dikes two or three years before plaintiff Little constructed the dam across the arroyos, the civil law doctrine concerning waters does not apply, for a land owner may construct embankments on his lands to protect his property from overflow waters without liability to another land owner un-

der the modern trend of authorities, unless he obstructs the flow of the stream."

Since the negligent act of defendant was the failure to maintain the dam or dikes, not the improper placement of the earthen structures along the side of the arroyos, we need not decide these points. The rule in New Mexico is set out in Heron v. Garcia, 48 N.M. 507, 153 P.2d 514:

"* * * We have stated a number of times that a case will not be reversed because the trial court gave a wrong reason for a correct judgment. * * *"

See also, Wiggs v. City of Albuquerque, 57 N.M. 770, 263 P.2d 963; State ex rel. McFann v. Hately, 34 N.M. 86, 278 P. 206.

In point VII, appellant contends:

"VII. The court having found by its findings Nos. 26, 48, 49, 50 and 52, that commencing with the year 1949, defendant Price commenced bringing into cultivation 350 acres of land at a cost of approximately $70,000 and that the three plaintiffs knew that defendant Price was constructing dikes in connection therewith, made no objection thereto, the court should have made and adopted defendant's conclusion of law No. 12,

that plaintiffs were guilty of laches."

In Sharpe v. Smith, 68 N.M. 253, 360 P.2d 917, regarding the question of laches, we said that the defense of laches is predicated upon the doctrine of estoppel, and the facts upon which the estoppel is to be predicated must amount to a waiver or non-claim. Lapse of time alone does not necessarily imply an unreasonable delay in bringing suit, but it must appear that the delay has worked to the injury of another.

We fail to see how any delay could work to the injury of defendant's cultivated land, since by finding of fact No. 48, (Defendant's requested finding of fact No. 41) the land was placed in cultivation at great expense prior to the construction of the dikes. It would thus seem that the delay worked to defendant's benefit rather than to his injury. We find this point to be without merit.

Appellant's point IV contends that plaintiffs failed to prove damages by substantial evidence and that part of the trial court's findings of fact Nos. 10 and 11 are erroneous. Appellant argues that there is no evidence as to the cost of water for irrigation, no cost of labor, fertilizer, price received for seed from ginned cotton, cost of hauling, ties and bagging for ginned cotton.

We have examined the record and find that the trial court's findings of fact Nos. 10 and 11 are supported by substantial evidence and we will not overturn them. Appellant's point IV is without merit.

 Finally, in looking at the remainder of appellant's point I, on inconsistent findings of fact, he contends that finding of fact No. 7, hereinbefore set out, and findings of fact Nos. 14, 15 and 53 are inconsistent, and that findings of fact Nos. 14 and 15 are inconsistent with conclusion of law No. 3:

"14. That although the dike was constructed by the said plaintiff, Little, on the lands of the defendant, the defendant contributed nothing by way of money, labor or material to the construction of said dike, the same being constructed solely by the plaintiff, Little, and the defendant received no compensation or service of any kind or character by reason of the construction of said dike.

"15. That the said dam or dike constructed by the plaintiff, Little, was for the sole benefit of the said plaintiff, Little, and to protect his lands from waters running through the Pena Blanca and Mossman arroyos.

"53. That on or about August 16, 1955, the plaintiffs and the defendant attempted to reach an agreement concerning the control of the outlet of water through the tube under said dike, at which time the plaintiff, Little, acquired the sole control thereof; but that the plaintiffs and defendant never reached or entered into any agreement concerning the same, and upon such failure the plaintiff, Little, abandoned and refused to have any further control or maintenance of said dike; and at no time thereafter did he advise the defendant that he was abandoning maintenance of said dike.

"3. That the defendant was negligent in failing to maintain in a safe, efficient and proper manner the dam constructed by the plaintiff, Jesse E. Little, and he was negligent in failing to maintain in a safe, efficient and proper manner the area to the rear or east of the dam."

Appellant bases his contention upon the theory that benefit and duty go hand-in-hand. We find this contention to be without merit.

In Canon City & C. C. R. Co. v. Oxtoby, 45 Colo. 214, 100 P. 1127, defendant railroad dug a "borrow pit" that collected surface waters which seeped onto plaintiff's

land, causing him damages. The court, in holding defendant liable, said:

"* * * In our view of the facts, however, we do not think it makes any difference which rule is to be followed; for whether the relative rights of adjacent landowners as to surface waters is to be determined by the civil-law, or the common-law, or the so-called modified rule, under neither has one owner the right to collect in an artificial channel, or reservoir, or pond, surface water, and discharge it upon his neighbor's lands to his injury, in a different manner from that in which it would naturally flow, if not interfered with, or to cast it in a greater volume, or permit it to escape, thereon in a more injurious way, either upon the surface, or under the surface, by the natural law of percolation."

The Colorado court then noted that by § 2272, Mills' Ann.St., the owner of a reservoir, built and used for storing water for irrigation purposes, is made liable for damages arising from leakage or overflow of the waters therefrom, or by floods caused by the breaking of its embankments, and said:

"* * * there is just as much reason for imposing liability upon the owner of the pond or lake into which he has gathered surface water for no other beneficial use, but merely as an incident to a proper use of his own lands, as upon one who stores water in a reservoir for irrigation. * * *"

Accord, Texas & P. Ry. Co. v. O'Mahoney, (Tex.Civ.App.1899), 50 S.W. 1049.

We therefore hold that the remaining contentions of appellant under point I are without merit.

■ Plaintiff Little cross-appeals, contending:

"I. The court erred in refusing to admit in evidence testimony and documentary evidence concerning a conference among W. C. Whatley, a lawyer, appellant, and appellees, Little and Tellez, on the ground that the advice and subject matter of such conference was privileged communication as to appellant, Price, who objected to such testimony and evidence."

As a tender of proof, Mr. Whatley testified that he had advised Mr. Price of his legal liabilities, if he did not permit Mr. Little to go upon his land for the purpose of maintaining the dam. Cross-appellant Little, in his brief in chief, argues that the trial court erred:

"* * * when it failed to admit the testimony concerning the conference in Mr. Whatley's office on the ground that same was privileged communication between attorney and client was certainly

prejudicial since it was material to the vital issue as to whether or not Mr. Price assumed the responsibility and consequences of the dike which Mr. Little built upon his land by his failure to permit to [sic] Mr. Little to strength [sic], improve and maintain same. * * *"

Inasmuch as the trial court found that negligent acts of defendant Price were his failure to maintain the dam, a finding which we uphold, the error is harmless and cross-appellant's contention is without merit.

The judgment of the district court is affirmed.

It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.

On Rehearing.

PER CURIAM:

Treating the motion for rehearing as having been granted, and in view of the matters set out in the motion to delay mandate, that is, that the Soil Conservation Service is about to commence the construction of dams on the Pena Blanca and Mossman Arroyos, through which flood waters flow onto appellant's and appellees' lands, which dams will, in the future, prevent the flooding of appellant's and appellees' farm lands, the necessity for the removal of the dikes set forth in the trial court's judgment will become moot and will only cost appellant unnecessary money and labor to remove the same, the injunctive portion of the judgment is hereby stayed.

The judgment appealed from is affirmed in all respects except that portion thereof which ordered and directed the defendant, Paul Price, to forthwith remove the artificial dikes constructed by him. The case is remanded to the district court with instructions to hear evidence and determine the issue as to whether work to be performed by the Soil Conservation Service makes unnecessary the removal of the dikes as ordered by the judgment filed June 11, 1962, and whether enforcement of that portion of the decree is moot by reason thereof.

The motion to delay the issuance of mandate is denied.

It is so ordered.