701 P.2d 382

Wanda WALKER, a single woman, Roy F. Miller, Jr., a married man dealing in his sole and separate estate, and Circle U Ranch, Inc., a corporation, Plaintiffs-Appellants,

v.

L.G. EVERIST, INC., Joe O. Garcia, the Honorable Santiago E. Campos, Walter Kegel, and Fred Standley, Defendants-Appellees.

No. 7812.

Court of Appeals of New Mexico.

May 2, 1985.

Certiorari Denied June 6, 1985.

Hartley B. Wess, Miller & Wess, Ltd., Albuquerque, for plaintiffs-appellants.

James C. Ritchie, Henry M. Bohnhoff, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, Kegel, Glass, McDevitt & Morow, Santa Fe, for defendants-appellees.

## OPINION

BIVINS, Judge.

Plaintiffs' amended complaint alleges that their land and improvements were damaged by flooding of the Brazos River in May, 1973. Plaintiffs claim that defendants, involved in gravel pit operation on adjacent property, negligently weakened the north bank of the river causing it to break its banks and flood plaintiffs' downstream property. Because defendants had taken no action to prevent future flooding, plaintiffs also sought abatement of a continuing nuisance.

Summary judgment in favor of defendants was reversed by this court in a memorandum opinion filed in May, 1980. Subsequently, the case proceeded to trial before the court without a jury. At the conclusion of plaintiffs' case the trial court granted defendants' NMSA 1978, Civ.P.Rule 41(b) (Repl.Pamp.1980) motion, and plaintiffs appeal. Although the sole issue on appeal involves the propriety of the trial court's action in granting defendants' motion, we discuss: (1) a procedural question raised as to Rule 41(b); (2) the law applicable to the case; and (3) whether the trial court properly granted defendants' motion. We hold that because the finding as to causation fails for lack of substantial evidence, the judgment must be reversed and the case remanded.

The trial court filed findings of fact and conclusions of law. In order to provide a background, we first summarize the trial court's findings and other facts as to which there is no dispute. At the location in question, the Brazos runs from east to west. Defendant Garcia, who owns the land adjacent to and immediately east of plaintiffs, entered into a ten-year lease with defendants Standley, Kegel and Campos (SKC) in July, 1964, which authorized the mining and removal of sand and gravel from Garcia's land bordering the north bank of the Brazos. Shortly after the execution of that lease, SKC entered into a sublease with Everist to carry out the mining activities contemplated in and during the term of the base lease. Both leases provided for royalty payments to the lessor, with the sublease containing a slightly higher percentage. Everist conducted mining operation from August, 1964 through October, 1970. Plaintiffs were aware of the mining operations when they acquired their property in 1966. The active channel of the Brazos at the time the mining operations commenced and when plaintiffs acquired their property was in the southernmost channel, and remained in that channel until the river flooded in May, 1973. After that flood, it formed a new channel to the north. The Brazos River valley floor, which includes the properties in question,

lies within an historical floodplain periodically subject to "inundation at various places." As a result of the May, 1973 flood, the river breached its bank in two or more places and flowed over and across plaintiffs' properties. The trial court found that the acts and omissions of defendants did not cause or contribute to plaintiffs' damages and that plaintiffs had failed to establish such. The trial court also found or concluded that plaintiffs failed to establish any breach of duty owed by defendants to plaintiffs, and that substantial evidence satisfied the court that defendants were not negligent.

### 1. Rule 41(b).

This rule in pertinent part provides:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(B). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subsection and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Plaintiffs contend that, in deciding a Rule 41(b) motion, the trial court had to accept all evidence introduced by plaintiffs as true, and give plaintiffs the benefit of all reasonable inferences. They rely on *Pilon v. Lobato,* 54 N.M. 218, 219 P.2d 290 (1950) and other older cases.

In 1949, the supreme court amended Rule 41(b) by adding the following sentence: "In an action tried by the court without a jury *the court as trier of facts may then determine them* and render judgment against the plaintiff or may decline to render any judgment until the close of all evidence." NMSA 1941, § 19–101(41)(b) (Supp.1951) (emphasis added). Substantially the same language appears in the current Rule 41(b). As a result, a Rule 41(b) motion no longer simply raises the legal question of whether the plaintiff has made a prima facie case, but rather permits a ruling on the merits.

Under this rule the trial court, as the trier of facts without a jury, is not bound to give the plaintiffs' evidence the most favorable possible aspect, together with all reasonable inferences; rather, it may properly weigh all the evidence and give such weight as the court believes it deserves. *Herbert v. Sandia Savings & Loan Association*, 82 N.M. 656, 486 P.2d 65 (1971); *Hickman v. Mylander*, 68 N.M. 340, 362 P.2d 500 (1961). *See also Securities & Exchange Commission v. Murphy*, 626 F.2d 633 (9th Cir.1980).

It is within this standard in mind that we review the grant of defendants' motion to dismiss.

**2. The applicable law.**

The parties sharply disagree as to the law applicable to this case, which disagreement is reflected not only in their arguments on appeal but also the arguments made to the trial court on defendants' motion. Much of the discussion on defendants' motion to dismiss centered on the correct theory of liability. Because the case must be remanded for further proceedings, we discuss the applicable law, how it applies to the respective defendants, and answer the contentions of the parties.

The precise question of the liability of an upstream landowner for damages to downstream landowners resulting from alleged interference with the stream or its flow has not been addressed by the appellate courts of this state. Nevertheless, the law governing surface waters has been articulated in a number of decisions and provides a basis for a similar rule applicable to the case before us.

In *Budagher v. Amrep Corp.*, 97 N.M. 116, 637 P.2d 547 (1981), the supreme court said:

> New Mexico has adopted the civil law governing surface waters. *Martinez v. Cook*, 56 N.M. 343, 244 P.2d 134 (1952). Under this rule, a landowner does not have the right to collect surface water in an artificial channel and discharge it upon his neighbor's lands to his injury, in a different manner or in a greater volume or at a greater rate than it would have flowed naturally. *Little v. Price*, 74 N.M. 626, 397 P.2d 15 (1964); *Rix v. Town of Alamogordo*, 42 N.M. 325, 77 P.2d 765 (1938); *Groff v. Circle K. Corporation*, 86 N.M. 531, 525 P.2d 891 (Ct. App.1974).

*Id.* at 119, 637 P.2d 547.

Paraphrasing that rule, as applied to a stream, a landowner does not have the right to interfere with, change the course or channel of a stream or its flow so as to discharge it upon his neighbor's lands to his injury, in a different manner or in a greater volume or at a greater rate than it would have flowed naturally, and may be held liable for the consequences of actions when he does so.

What then must the complaining landowner prove in order to make a prima facie case? In *Gutierrez v. Rio Rancho Estates, Inc.*, 93 N.M. 755, 605 P.2d 1154 (1980), the supreme court, in explaining the rule quoted above, stated:

> As we interpret the law set forth in the above cases, the legal principle applicable to the issue involved is not "ordinary negligence" nor "strict liability" nor "res ipsa loquitur." Instead, under the above authorities, once the plaintiff proves the elements of liability stated by the rule, no more is required, and plaintiff will have established that the defendant's activity constitutes negligence. The burden then shifts to defendant, in order to

avoid liability, to plead and prove any defense which would have been applicable in any ordinary negligence case.

*Id.* at 757, 605 P.2d 1154.

Thus, once plaintiff proves that the activities of the defendants interfered with or caused a change in the course or channel of the stream or flow resulting in the discharge upon his lands of the stream in a different manner or in a greater volume or at a greater rate than it would have flowed naturally, and that such activities resulted in damage to his land or the improvements thereon, plaintiff will have established a right to recovery, subject to any available defenses proved by defendant.

Because the plaintiffs' property was damaged by floodwaters from a stream and not surface waters, defendants argue that *Budagher* and the cases it relies on are inapplicable. Defendants thus suggest that the duties owed by adjoining landowners are dependent on whether the damage was caused by surface waters or waters from a natural watercourse.[1]

Such a distinction is without basis in New Mexico. Although *Budagher* stated that the "civil rule" governs surface water in New Mexico, it expressly relied on *Martinez v. Cook*, 56 N.M. 343, 244 P.2d 134 (1952), for the recognition of this rule. In *Martinez*, the supreme court noted that since New Mexico is a state with an enormous number of arroyos which serve the purpose of drainage ways during the rainy season, the rule in eastern states, that to constitute a watercourse, water must be carried in the channel throughout the entire year or a majority of the time is not well suited to New Mexico. *See also Jacquez Ditch Co. v. Garcia*, 17 N.M. 160, 124 P. 891 (1912) (arroyos held to be a natural watercourse); *Little v. Price*, 74 N.M. 626, 397 P.2d 15 (1964) (arroyos with runoff considered a natural watercourse; court applied civil rule of surface waters).

Thus, in New Mexico, as relates to adjoining landowners, the distinction made between surface water and water from a natural watercourse has little or no significance. In this situation, the law as to surface water should apply equally to flood waters from a natural stream. Therefore, we adopt such a rule.

Defendants SKC were sublessors to Defendant Everist at the time the 1973 flood occurred. They argued at trial that because of the sublease, they had no duty to plaintiffs. This argument would apply equally to Garcia. SKC's duty, however, is predicated on their relationship with defendant Everist. A sublease creates the relationship of landlord and tenant as between the lessee and his subtenant. *Marcellus v. K.O.V., Inc.*, 5 Kan.App.2d 294, 615 P.2d 170 (1980).

The Restatement (Second) of Torts, § 837(1) (1979) provides:

(1) A lessor of land is subject to liability for a nuisance caused by an activity carried on upon the land while the lease continues and the lessor continues as owner, if the lessor would be liable if he had carried on the activity himself, and

(a) at the time of the lease the lessor consents to the activity or knows or has reason to know that it will be carried on, and

(b) he then knows or should know that it will necessarily involve or is already causing the nuisance.

Of course, clause (a) has been satisfied because both Garcia and SKC knew of and consented to the activity to be carried on, i.e., the mining and removal of sand and gravel. The lessor and sublessors derived their royalty payments from that very activity.

As illustrative of clause (b), the Restatement gives the following example:

1. A watercourse has been said to exist only where waters usually flow in a particular direction and by a regular channel. *Johnson v. Whitten*, 384 A.2d 698 (Me.1978). In contrast, surface waters are waters from rain, springs or melting snow that are not part of a natural watercourse and have no permanent source of supply. *Sullivan v. Hoffman*, 207 Neb. 166, 296 N.W.2d 707 (1980).

3. A is the possessor of riparian land on a small stream. B is the possessor of a tract of riparian land on the stream above A's land. A leases his land to C for use as a mill site. It is provided in the lease that C will erect and maintain a dam of a specified height at a specified place in the stream on A's land. The dam will necessarily cause an unreasonable flooding of B's land. A is subject to liability to B.

*Id.* at 155.

We adopt the Restatement and believe it to be consistent with the rationale of *Budagher* relating to the liability of landowners for the actions of independent contractors.

Restatement § 837(1) speaks in terms of "liability for a nuisance." *Budagher* says that the diversion of the natural flow of surface waters which causes injury to another's lands constitutes a private nuisance; no express averment or proof of negligence is required. The parties call our attention to language in *Moreno v. Marrs*, 102 N.M. 373, 695 P.2d 1322 (Ct. App.1984), *cert. quashed,* 696 P.2d 1005 (1985), to the effect that nuisance is not a separate tort, but depends on tortious conduct within the usual categories of tort liability. Thus, under *Marrs*, nuisances are types of damages, and in order for defendant to be liable for the nuisance, his conduct must fall into the usual categories of tort liability. Negligence is but one such category.

Does *Marrs* conflict with *Budagher?* Does the language in *Budagher* conflict with other language in that same opinion to the effect that proof of the elements of liability stated by the rule establishes defendant's negligence? We believe that under *Gutierrez v. Rio Rancho Estates, Inc.,* once liability is established, nuisance as a type of damage becomes irrelevant; thus, we see no conflict.

■ If the potential harm is sufficiently substantial and predictable, it is the duty of the lessor to abate the nuisance created by his lessee. *Green v. Asher Coal Mining Co.,* 377 S.W.2d 68 (Ky.App.1964) (action by lower riparians to recover damages sustained as a result of debris produced by lessee in strip mining operation); *see also Campbell v. Louisville Coal Mining Co.,* 39 Colo. 379, 89 P. 767 (1907). Here there was evidence that prior to the May, 1973 flood, plaintiffs expressed concern to Garcia of the potential for damage as a result of the mining operations. Mr. Kegel wrote Everist that his operations had lowered the banks of the Brazos and that "unless it is built up the Spring runoff will overflow and possibly might cause damage not only to the Garcia property but also other properties downstream." Everist was directed to remedy the situation but apparently failed to do so. Defendants claim at oral argument this letter did not refer to the areas where the breach occurred, but elsewhere. Even if the trial court could find that the Kegel letter was unrelated, this would not of itself excuse defendants from knowledge that the mining activity might necessarily involve a potential hazard. If the expected operations under the lease results in such injury as may be reasonably anticipated, the lessor has been a party to the wrong and cannot disclaim liability on ground that he did not personally create the condition or commit a wrongful act. *Green.*

■ During argument much emphasis was placed on the failure to prove Everist violated any industry standard. As previously stated, it is enough that plaintiffs prove the elements under *Budagher* in order to show negligence and that the skill or manner in which the work was done would not of itself absolve the party from liability. In any event, adherence to an industry standard is not necessarily conclusive as to the issue of negligence and does not itself relieve a defendant engaged in that particular industry from liability. The defendant must still use reasonable care under all circumstances, and if prevailing practices in industry do not comport to that standard, the defendant may be found negligent notwithstanding compliance with industry custom. *Buccafusco v. Public Service Electric & Gas Co.,* 49 N.J.Super. 385,

140 A.2d 79 (1958); *Columbus & H. Coal & Iron Co. v. Tucker*, 48 Ohio St. 41, 26 N.E. 630 (1891).

Having stated the law applicable to the case, we turn to the question of the propriety of granting defendants' Rule 41(b) motion.

### 3. Propriety of granting the Rule 41(b) motion.

*Herbert* holds that in determining whether findings made by the trial court, as required by Rule 41(b), are supported by substantial evidence, that evidence must be viewed in the same manner as evidence is viewed in support of findings made in any other case decided on its merits. This means that the evidence must be viewed in the light most favorable to support the trial court's findings. *Blancett v. Homestake-Sapin Partners*, 73 N.M. 47, 385 P.2d 568 (1963). Evidence inconsistent with or unfavorable to the findings will be disregarded. *Worthey v. Sedillo Title Guaranty, Inc.*, 85 N.M. 339, 512 P.2d 667 (1973). It is for the trial court to weigh the evidence, determine the credibility of the witnesses, reconcile inconsistent statements of the witnesses, and determine where the truth lies. *Montano v. Saavedra*, 70 N.M. 332, 373 P.2d 824 (1962). The appellate court may not reweigh the evidence, nor substitute its judgment for that of the trier of fact. *Ideal Basic Industries, Inc. v. Evans*, 91 N.M. 460, 575 P.2d 1345 (1978). Thus, the scope of appellate review is exceedingly narrow.

The pivotal issue is whether substantial evidence supports the negative finding as to causation. We also discuss the effect a misapplication of the law may have had upon that finding.

Regardless of what theory of liability is applied, proximate causation is an essential element. The trial court found that "[t]he acts and omissions of defendants did not cause or contribute to Plaintiffs' damage."

We examine the evidence favorable to defendants to determine if substantial evidence at the close of plaintiffs' case justifies granting the Rule 41(b) motion. Substantial evidence is that relevant evidence which is acceptable to a reasonable mind as adequate support for a conclusion. *Worthey v. Sedillo Title Guaranty, Inc.* Defendants essentially offer two items as support for the finding; one positive, the other negative. They claim that the written report of their expert would support a finding of no causation. On the negative side, defendants contend that plaintiffs' expert was discredited and the trial court could have rejected his opinions.

Although defendants' expert, Mr. Denney, did not take the stand, his report was introduced without objection during cross-examination of plaintiffs' expert. Mr. Denney's report concluded that plaintiffs' property would have been flooded even if the gravel pit excavation work never occurred. In our memorandum opinion reversing summary judgment for defendants, we said this conclusion is not supported by other portions of the report.[2]

Defendants attempt to supply the missing factual support for Mr. Denney's conclusion, not through his testimony subject to cross-examination, but rather through other witnesses, notably plaintiffs' expert, Mr. Easterling. *Landers v. Atchison, Topeka & Santa Fe Railway Co.*, 68 N.M. 130, 359 P.2d 522 (1961), held it reversible error to allow an expert to answer a hypothetical based on erroneous factors. Here we do not know whether Mr. Denney relied on the factors supplied by other witnesses; he has not yet taken the stand. We recognize that NMSA 1978, Evid.Rule 703 (Repl.Pamp.1983) does not require that facts or data be admissible in evidence, if of a type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject. Until Mr. Denney testifies, we cannot tell if this foundation has been met. An expert may

---

**2.** While a memorandum opinion may not be cited as precedent, it still controls the course of the trial of a case in which it is rendered.

be required to disclose the underlying facts or data on cross-examination. NMSA 1978, Evid.R. 705 (Repl.Pamp.1983). Mr. Denney has yet to be cross-examined. Finally, since the expert's report reflects his thought process, the missing facts or data upon which he relied should be supplied by him, not third parties. We have long held that experts must satisfactorily explain the steps followed in reaching a conclusion, and without that explanation, the opinion is not competent evidence. *Four Hills Country Club v. Bernalillo County Property Tax Protest Board,* 94 N.M. 709, 616 P.2d 422 (Ct.App.1979).

Defendants argue that the plaintiffs' expert was impeached and the trial court could have rejected his opinion. Mr. Easterling testified that the mining operations caused the river to breach its banks and form a new channel which flooded plaintiffs' property causing the damage complained of. Defendants refer us to transcript references which they claim demonstrate inconsistencies in Mr. Easterling's testimony which they submit could have justified a rejection of this expert's opinions. Defendants rely on *Montano v. Saavedra,* for the proposition that the trial court could reject expert testimony as to causation where it was inconsistent. In that case, the doctor testified that it was quite probable that the accident was the cause of plaintiff's disability, but on cross-examination admitted it would be difficult to say with any degree of probability that the accident was the probable cause.

In the case before us, Mr. Easterling in an earlier deposition gave the following answer to this question:

Q. You're not saying that the flooding of the Circle U would not have occurred in the absence of a gravel mining operation in this flood, are you?

A. Based on this information, there wasn't enough—based on this information provided in the Denney report, there wasn't enough information to say one way or the other on that. So, no, the answer is no. I wasn't saying the flooding would not have occurred. I'm saying

regardless of whether the bank was lowered or not, the amount of water traveling through the gravel mining operation and the pits that they left out there was substantially higher than it would have been had the operation not been there. And, therefore, the amount of water traversing the Circle U Ranch was greater and probably flowed for a significantly longer period of time and, therefore, had the opportunity to remove a lot more material on the site.

We do not agree that, as in *Montano,* the witness gave an inconsistent or contradictory response. First of all, the response is based solely on the information provided in the Denney report, whereas the witness's opinions expressed at trial were based on additional or other data. Second, the deposition response does not admit, as defendants claim, that damage to plaintiffs' property would have occurred even in the absence of the gravel mining operations. As we read the response, the expert was saying that the amount of water running "out there" [presumably over defendants and plaintiffs' lands] was substantially higher than it would have been without the mining operation. Increase in flow provides a basis for liability, if it results in damages.

A fair reading of the record satisfies us that Mr. Easterling was not discredited so that the trial court rejected his testimony. This is borne out by the trial court's repeated oral remarks made during the testimony and during argument on the Rule 41(b) motion that plaintiffs had clearly established proximate cause for the purposes of the motion. In fact, the trial court cut plaintiffs' attorney off at one point from arguing that issue. While we recognize that oral rulings or statements by the trial court do not constitute its decision, as contemplated by the Rules of Civil Procedure, *Peace Foundation, Inc. v. City of Albuquerque,* 76 N.M. 757, 418 P.2d 535 (1966), nevertheless, they may shed light on the question of whether expert testimony was so discredited as to be rejected. We are unable to say it was.

This then leaves us without any substantial evidence to support the finding that the "acts and omissions of defendants did not cause or contribute to Plaintiffs' damage." A trial court's finding which is not supported by substantial evidence and which has been properly challenged cannot be sustained on appeal. *Henderson v. Lekvold,* 99 N.M. 269, 657 P.2d 125 (1983). This finding may, however, be explained on the basis of a misinterpretation of the law. If the trial court believed that plaintiffs were required to present testimony to show Everist violated mining standards or to demonstrate a further breach of duty, as indicated by the record, and that Garcia and SKC were insulated from liability by their leases, as urged, then arguably proximate cause would be lacking. But when considered in the context of the law which imposes liability regardless of skill and exposes a lessor to liability if he knew of the activity and could reasonably anticipate its potential for harm, the finding as to causation makes no sense. A finding of fact induced by error of law cannot stand. *See Smallfield v. Home Insurance Co. of New York,* 244 F.2d 337 (9th Cir.1957) (finding of fact induced by error of law not binding); *see* Barron and Holtzoff, *Federal Practice and Procedure,* § 1137 (1961) pp. 560–563.

The conclusion we reach that the finding of no causation was induced by a misapplication of the law is reinforced when we compare the rather substantial evidence offered by plaintiffs with the insubstantial evidence relied on by defendants to support the finding, as discussed above. Plaintiffs produced witnesses who testified as to the nature and extent of the mining operations, its close proximity to the river banks, and the fact that there was no flooding of lands contiguous to the Brazos east of Garcia and plaintiffs where the river rejoined its usual and customary channel. The plaintiffs expressed concern to Garcia, but nothing was done. Plaintiffs' expert gave the opinion that the mining operations did cause the flooding and damage to plaintiffs' property. To ignore this evidence and hold that the trial court based its finding on the incomplete Denney report would imply bad faith on the part of the trial court. This we refuse to do. We hold that the negative finding as to causation was induced by an error as to the law.

## 4. Conclusion.

The case is remanded for the trial court to proceed to hear defendants' case, with or without requiring plaintiffs to put on their case again. Defendants shall pay costs on appeal.

IT IS SO ORDERED.

NEAL and ALARID, JJ., concur.